[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. LaRosa*, Slip Opinion No. 2021-Ohio-4060.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-4060

THE STATE OF OHIO, APPELLEE, *v*. LAROSA, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. LaRosa*, Slip Opinion No. 2021-Ohio-4060.]**

*Criminal law—No-contest pleas—Fourth Amendment—Suppression of evidence—Harmless error—Trial court erred in part in denying defendant's motion to suppress evidence, but the error was harmless—Court of appeals' judgment affirmed.*

(No. 2020-0337—Submitted March 3, 2021—Decided November 18, 2021.)

APPEAL from the Court of Appeals for Trumbull County, No. 2018-T-0097, 2020-Ohio-160.

_____

FISCHER, J.

{¶ 1} In this appeal from a judgment of the Eleventh District Court of Appeals, we are asked to determine whether the warrantless seizure of certain evidence from a person's hospital room and the taking of evidence from the person's fingernails violated the person's right against unreasonable searches and

seizures under the Fourth Amendment to the United States Constitution. We hold that one of the seizures and the search at issue in this case did not violate the Fourth Amendment. We further hold that although other seizures at issue did violate the Fourth Amendment, the admission of evidence obtained from those seizures was harmless error. We accordingly affirm the judgment of the court of appeals.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{¶ 2} In the late afternoon of March 31, 2015, appellant, Jacob LaRosa, then 15 years old, arrived home with blood on himself. Believing that LaRosa had been assaulted, his mother contacted the Niles Police Department. When Officer Todd Mobley arrived at LaRosa's home, he found LaRosa, who appeared intoxicated, wearing only socks and underwear and repeatedly saying words to the effect of "they're going to kill me for this." Officer Mobley noticed that LaRosa had blood on him but did not have any visible injuries. Officer Mobley arranged for LaRosa to be transported to the hospital by ambulance.

{¶ 3} As LaRosa was being loaded into the ambulance, Officer Mobley was directed toward the home directly across an alleyway from LaRosa's home. Upon approaching the neighboring home, which was the residence of Marie Belcastro, the victim here, Officer Mobley met Belcastro's daughter. Officer Mobley was joined at Belcastro's home by Detective Craig Aurilo and Detective James Robbins. They found that the door had been kicked or shouldered in and that there was "blood everywhere." They discovered Belcastro's deceased body in a bedroom.

{¶ 4} LaRosa appeared to still be intoxicated when he arrived at the hospital and he was incoherent. Officer Michael Biddlestone arrived at the hospital with instructions to secure LaRosa as a suspect regarding Belcastro's death. After finding LaRosa in the hospital's emergency room, Officer Biddlestone handcuffed him to the bed.

{¶ 5} During a hearing on LaRosa's motion to suppress the evidence that was gathered at the hospital, Officer Biddlestone testified that LaRosa's socks and

underwear had been removed by hospital staff so that they could provide medical treatment to LaRosa. Officer Biddlestone further stated that when LaRosa was urinating, the nurse who assisted LaRosa advised the officer that there was blood on LaRosa's groin, and the nurse wiped LaRosa's groin clean with a hospital washcloth. Officer Biddlestone stated that he obtained LaRosa's previously removed socks and underwear from hospital staff along with the hospital's washcloth that was used to clean LaRosa.

{¶ 6} While LaRosa was at the hospital, Detective Aurilo obtained a warrant for the search of LaRosa's body. The warrant permitted buccal, penile, and hand swabs of LaRosa. Pursuant to the search warrant, hospital personnel obtained fingernail scrapings from LaRosa and provided the scrapings to Detective Aurilo.

{¶ 7} LaRosa was subsequently charged in the Trumbull County Court of Common Pleas, Juvenile Division, with delinquency counts relating to Belcastro's death. The juvenile court granted the state's motion to transfer the case to the general division of the common pleas court for criminal prosecution of LaRosa as an adult.

{¶ 8} After the transfer of the case to adult court, LaRosa was indicted on one count of aggravated murder in violation of R.C. 2903.01(B) and (F), one count of aggravated burglary in violation of R.C. 2911.11(A)(1) and (2) and (B), one count of aggravated robbery in violation of R.C. 2911.01(A)(1) and (3) and (C), and one count of attempted rape in violation of R.C. 2923.02(A) and (E)(1) and R.C. 2907.02(A)(2) and (B). As discussed above, LaRosa filed a motion to suppress the evidence obtained from his hospital room, including his socks and underwear, the washcloth, and his fingernail scrapings.

{¶ 9} The trial court denied the motion to suppress following a hearing on the matter. It concluded that the scraping of LaRosa's fingernails fell within the scope of the search warrant, because the warrant provided for a "hand swab" and fingernails are a part of the hand. As to the socks and underwear, the court

concluded that a defendant has no expectation of privacy in clothing that is removed from the defendant when he voluntarily presents himself for treatment at a hospital emergency room purporting to be a victim and that the Fourth Amendment's protections accordingly did not apply to the seizure of LaRosa's removed clothing.

{¶ 10} Finally, the trial court concluded that LaRosa had no expectation of privacy in the washcloth, because the washcloth was the hospital's property. Although the court determined that LaRosa presented a colorable argument that he had a reasonable expectation of privacy in the washcloth because it had his urine on it, the court determined that the inevitable-discovery exception to the warrant requirement applied and permitted the admission of evidence relating to the washcloth. The court reasoned that because police had a search warrant for a swab of LaRosa's penis and secured that swab, the evidence relating to the washcloth was also secured by the swab. The court further noted that there was no evidence that the blood on the washcloth belonged to LaRosa and that it was likely the victim's blood, since there was no evidence that LaRosa had been injured in any way, and that LaRosa had no expectation of privacy in someone else's blood.

{¶ 11} After the trial court denied LaRosa's motion to suppress, the case proceeded to trial. After one day of voir dire, LaRosa entered a no-contest plea to all the charges. He was sentenced to life imprisonment without the possibility of parole for the aggravated-murder count and an aggregate prison sentence of 30 years on the other counts, to be served consecutively to the life-without-parole sentence. LaRosa was also classified as a Tier III sex offender.

{¶ 12} The Eleventh District affirmed LaRosa's convictions and sentence in a unanimous decision. 2020-Ohio-160, ¶ 94. The court of appeals held that because LaRosa's socks and underwear were initially seized by a nurse attempting to treat him for alleged injuries, there was no governmental action involved in the seizure and the protections of the Fourth Amendment did not apply. *Id.* at ¶ 53. The court further held that because the washcloth was not LaRosa's property, he

had no reasonable expectation of privacy in it and its seizure did not violate the Fourth Amendment. *Id.* As to the fingernail scrapings, the Eleventh District agreed with the trial court's determination that the term "hand swabs," as used in the warrant, encompassed fingernail scrapings. *Id.* at ¶ 57.

{¶ 13} We accepted LaRosa's discretionary appeal to consider the following proposition of law: "The seizure of personal items from a hospital room, without consent and without a warrant violates the Fourth Amendment." *See* 158 Ohio St.3d 1526, 2020-Ohio-3016, 145 N.E.3d 325.

## II. ANALYSIS

{¶ 14} As an initial matter, we note that although the proposition of law that we accepted for review is premised on only the Fourth Amendment to the United States Constitution, LaRosa argues in his merit brief that the evidence in question should have been suppressed under both the Fourth Amendment *and* Article I, Section 14 of the Ohio Constitution. Although LaRosa did not refer to the Ohio Constitution in the proposition of law that he submitted to this court for consideration, he did refer to Article I, Section 14 in his argument supporting the proposition of law and in the assignment of error that he raised in the court of appeals below.

{¶ 15} In his merit brief, however, LaRosa offers no argument specific to the Ohio Constitution and instead focuses his argument on the Fourth Amendment and federal caselaw. Indeed, the only discussion that he presents regarding the Ohio Constitution is his statement that "[t]he Constitution of the State of Ohio likewise provides similar protections [to those of the Fourth Amendment] against unregulated search and seizure by the government." Because LaRosa offers no argument specific to the Ohio Constitution and because he does not argue that its protections differ from those provided by the Fourth Amendment, our analysis focuses on only the Fourth Amendment's application in this case.

**{¶ 16}** The Fourth Amendment protects people against unreasonable searches and seizures. In accordance with those protections, the state has the burden to establish by a preponderance of the evidence that a defendant's property was not illegally seized or that no illegal search occurred in violation of the defendant's constitutional rights. *See Athens v. Wolf*, 38 Ohio St.2d 237, 241, 313 N.E.2d 405 (1974).

**{¶ 17}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. The reviewing court must accept the trial court's findings of fact if they are supported by competent, credible evidence, and the court reviews the trial court's legal conclusions de novo. *Id*.

### A. The Propriety of the Seizures

**{¶ 18}** Because the evidence that LaRosa sought to suppress falls into three distinct categories, we will discuss each of those categories in turn. First, we will address the seizure of the hospital's washcloth that was used to clean LaRosa's body. Second, we will address the scrapings taken from LaRosa's fingernails. Third, we will address the seizure of LaRosa's socks and underwear.

### 1. The Seizure of the Hospital's Washcloth

**{¶ 19}** In his merit brief, LaRosa makes no particularized argument regarding the washcloth that hospital staff used to clean his body. Instead, he lumps his argument regarding that item together with his claim regarding his socks and underwear, seemingly arguing that the washcloth was his personal property and that he had an expectation of privacy in it. The state highlights the fact that the washcloth was not LaRosa's property but instead was the property of the hospital. The state then quotes and relies upon the trial court's analysis in arguing that even if LaRosa had an expectation of privacy in the washcloth because it had his urine on it, any evidence on the washcloth was subject to the inevitable-discovery exception to the warrant requirement because the warrant provided for a swab of

6

LaRosa's penis. The state further argues that LaRosa had no expectation of privacy regarding any blood on the washcloth because the blood was not his.

{¶ 20} We agree with the Eleventh District's analysis regarding the washcloth. The washcloth itself was not LaRosa's property, and he had no expectation of privacy in it. LaRosa may claim no possessory interest in his urine that ended up on a washcloth belonging to someone else. Regarding any blood on the washcloth, police had a warrant to swab LaRosa's penis, so it was inevitable that they would have obtained a sample of any evidence that remained on that area of his body. *See Nix v. Williams*, 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed. 377 (1984) (if the state can establish by a preponderance of the evidence that the illegally obtained evidence ultimately or inevitably would have been discovered by lawful means, then the evidence should be admitted); *State v. Perkins*, 18 Ohio St.3d 193, 196, 480 N.E.2d 763 (1985) (applying *Nix* and explaining that the ultimate- or inevitable-discovery exception acts to forgive the constitutional violation made in obtaining the evidence). Indeed, testing of the penile swabs in this case revealed the presence of the victim's DNA.

{¶ 21} For these reasons, we affirm the portion of the Eleventh District's judgment overruling LaRosa's challenge to the seizure of the hospital's washcloth.

### 2. The Scrapings from LaRosa's Fingernails

{¶ 22} Regarding the scrapings taken from LaRosa's fingernails, LaRosa offers only minimal argument in his merit brief. He asserts that because the warrant in this case authorized the swabbing of his hands—but did not mention or specifically authorize the taking of fingernail scrapings—the trial court erred in denying his motion to suppress the fingernail scrapings.

{¶ 23} The state responds that although there might be differences between the procedures for swabbing hands and scraping fingernails, both constitute a search of the hands. The state argues that because the warrant authorized a search of LaRosa's hands, it permitted the scraping of LaRosa's fingernails.

**{¶ 24}** The United States Supreme Court has held that in determining whether a warrant permits a search of a specific location, "[i]t is enough if the description is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended." *Steele v. United States*, 267 U.S. 498, 503, 45 S.Ct. 414, 69 L.Ed. 757 (1925). In *Steele*, the warrant at issue permitted a search of "said building at the above address, any building or rooms connected or used in connection with said garage, the basement or subcellar beneath the same." *Id.* at 500. The court concluded that this warrant language permitted a search of upper rooms connected to the building's garage by an elevator. *Id.* at 503.

**{¶ 25}** In this case, the trial and appellate courts concluded that the warrant provided for the search of LaRosa's hands and that an officer executing the warrant could with reasonable effort ascertain and identify the place intended to be searched: LaRosa's hands. And because the fingernails are a part of the hand, the lower courts determined that the search of the fingernails was permitted.

**{¶ 26}** We agree with the lower courts' analyses. As the United States Supreme Court has explained, the purpose of the particularity requirement for search warrants is "to prevent general searches" and to ensure "that the search will be carefully tailored to its justifications and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987). In this case, the search warrant did not authorize a general or open-ended search. Instead, it authorized a search of certain specific areas, one of which was LaRosa's hands. Because the fingernails are a part of a specific area identified in the search warrant, we reject LaRosa's argument that the trial court erred in denying his motion to suppress the fingernail scrapings.

**{¶ 27}** For these reasons, we hold that a search warrant permitting a search of a person's hands allows for a search of the person's fingernails. We accordingly

affirm the Eleventh District's judgment regarding LaRosa's challenge to the admission of the fingernail scrapings.

### 3. The Seizure of LaRosa's Socks and Underwear

{¶ 28} Regarding the seizure of LaRosa's socks and underwear, LaRosa argues that the socks and underwear were actually seized by the police, rather than hospital staff. He asserts that this seizure was unlawful because he had a reasonable, subjective expectation of privacy in those items.

{¶ 29} The state responds that no governmental action was involved in the seizure of LaRosa's socks and underwear. It further argues that even if there had been governmental action in the seizure of those items, LaRosa did not have an expectation of privacy in the items because they were evidence of a crime and LaRosa arrived at the hospital purporting to be a victim of a crime.

### a. The seizure by the police of LaRosa's socks and underwear constituted governmental action

{¶ 30} In analyzing whether LaRosa's socks and underwear should have been suppressed, we must determine whether the police "seized" those items and, if so, whether the state can establish an exception to the Fourth Amendment's warrant requirement regarding the items.

{¶ 31} LaRosa asserts that when personal items are taken by hospital staff, a bailment is created under which the hospital has no possessory interest in the property and no right to give it to anyone else. LaRosa argues that because hospital staff could thus not legally give the items to the officer, the items were seized by the officer and the lower courts were incorrect in concluding that no governmental action was involved in the taking of the items. In response, the state notes that LaRosa failed to raise any bailment argument below.

{¶ 32} Regardless of whether LaRosa's bailment argument is properly before this court, we conclude that the police did seize the socks and underwear. Although the trial court found that these items were removed from LaRosa's body

by hospital staff, the items were not abandoned. When considering whether a defendant abandoned his property, we consider whether he "voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question." *State v. Freeman*, 64 Ohio St.2d 291, 297, 414 N.E.2d 1044 (1980). The items at issue here remained in the room where LaRosa was being treated, and the state has not alleged or presented any evidence showing that LaRosa made any kind of statement or took any action indicating that he intended to voluntarily discard, leave behind, or relinquish those items. Although the officer did not seize the items directly from LaRosa's body, the officer did, in fact, take them from LaRosa's hospital room. We accordingly conclude that the items were seized by the officer, an agent of the government. To the extent that the court of appeals concluded otherwise, its conclusion was erroneous.

**b. *In this appeal, the state has not established than an exception to the warrant requirement applies to the warrantless seizure of LaRosa's socks and underwear***

{¶ 33} Although the officer seized the socks and underwear, the seizure did not violate the Fourth Amendment if the state can show that an exception to the warrant requirement applies to the seizure. To that end, the state asserts that the "plain view" exception applies here. Pursuant to the plain-view exception, a law-enforcement officer may seize clearly incriminating evidence when it is discovered in a place where the officer has a right to be. *Washington v. Chrisman*, 455 U.S. 1, 5-6, 102 S.Ct. 812, 70 L.Ed.2d 778 (1982).

{¶ 34} The state acknowledges in its merit brief that it did not raise a plain-view argument below. " '[Generally,] this court will not consider arguments that were not raised in the courts below.' " (Brackets added in *Castagnola*.) *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, ¶ 67, quoting *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio St.3d 274, 279, 617 N.E.2d 1075 (1993).

{¶ 35} In its argument to the court of appeals that the trial court properly denied LaRosa's motion to suppress the socks and underwear, the state submitted only that there was no governmental action involved in the seizure of those items and that LaRosa lacked any privacy interest in them. The state did not argue that any exception to the warrant requirement applies to the seizure of those items. Thus, the state's plain-view argument was not implicit in any issue of law that it raised below, and we do not need to consider its plain-view argument to address the legal issues that it actually raised below. For those reasons, we will not consider the state's plain-view argument now. And because the state has not asserted that any other exception to the warrant requirement applies to the seizure of LaRosa's socks and underwear, we conclude that the trial court erred in denying the motion to suppress those items.

## B. To the Extent that the Trial Court's Judgment Denying LaRosa's Motion to Suppress Was Erroneous, the Error Was Harmless

{¶ 36} Although we hold that the trial court erred in denying LaRosa's motion to suppress his socks and underwear, our analysis does not end there. LaRosa argues that the trial court erred in denying his motion to suppress as to *all* the challenged evidence. He avers that there is a reasonable possibility that the denial of his suppression request as to all the challenged evidence contributed to his decision to enter a no-contest plea.

{¶ 37} Having concluded that some, but not all, of the challenged evidence should have been suppressed, we must therefore assess the significance of the trial court's limited error, specifically whether that error is reversible error. *See, e.g.*, *State v. Vance*, 5th Dist. Ashland No. 2007-COA-035, 2008-Ohio-4763, ¶ 34 (explaining that when a court reviews an appeal based on a non-forfeited alleged error, the court must first determine whether there was an error, and then if there was, whether the error was harmless); *see also State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 9-15 (noting that "Crim.R. 52 affords appellate

courts limited power to correct errors that occurred during the trial court proceeding" and that "if the defendant has objected to an error in the trial court, an appellate court reviews the error under the 'harmless error' standard in Crim.R. 52(A)"). Our review of this appeal would be incomplete if we failed to perform this second step of the analysis. After conducting that analysis, we conclude that the failure to suppress LaRosa's socks and underwear constituted harmless error.

{¶ 38} Pursuant to Crim.R. 52(A), Ohio's harmless-error rule for criminal cases, "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." And pursuant to Crim.R. 52(B), Ohio's plain-error rule for criminal cases, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

{¶ 39} Fed.R.Crim.P. 52 is the nearly identical counterpart to Ohio's Crim.R. 52. *Perry* at ¶ 14, fn. 1. The United States Supreme Court has determined who bears the burden of showing prejudice under the harmless-error standard of Fed.R.Crim.P. 52(a) and the plain-error standard of Fed.R.Crim.P. 52(b):

> When the defendant has made a timely objection to an error and Rule 52(a) applies, a court of appeals normally engages in a specific analysis of the district court record—a so-called "harmless error" inquiry—to determine whether the error was prejudicial. Rule 52(b) normally requires the same kind of inquiry, with one important difference: It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice. * * * This burden shifting is dictated by a subtle but important difference in language between the two parts of Rule 52: While Rule 52(a) precludes error correction only if the error "does *not* affect substantial rights" (emphasis added), Rule 52(b) authorizes no remedy unless the error does "affec[t] substantial rights."

(Brackets added in *Olano*.) *United States v. Olano*, 507 U.S. 725, 734-735, 113 S.Ct.1770, 123 L.Ed.2d 508 (1993), quoting Fed.R.Crim.P. 52(a) and (b); *see also United States v. Vonn*, 535 U.S. 55, 62, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002) (under the harmless-error standard of Fed.R.Crim.P. 52(a), a court's review of an error properly preserved by a defendant is "subject to an opportunity on the Government's part to carry the burden of showing that any error was harmless, as having no effect on the defendant's substantial rights").

{¶ 40} We have applied the same burden-shifting analysis to Ohio's Crim.R. 52, explaining that although the state bears the burden of showing that an objected-to error was harmless or, in other words, that it did not affect the defendant's substantial rights, the burden shifts to the defendant to establish that a plain error, although not objected to, nevertheless affected his substantial rights. *See Perry* at ¶ 14-15. "Crim.R. 52(A) is mandatory, not permissive, and thus affords the appellate court no discretion to disregard the error." *Id.* at ¶ 15, citing *Olano* at 735-736.

{¶ 41} Crim.R. 12(I) provides that "[t]he plea of no contest does not preclude a defendant from asserting upon appeal that the trial court *prejudicially* erred in ruling on a pretrial motion, including a pretrial motion to suppress evidence." (Emphasis added.) Inherent in that rule's language is the notion that when a judgment stemming from a no-contest plea is appealed, it is permissible for the appellate court to review the claimed error for prejudice, just like any other error. *See also* App.R. 12(D) ("where the court of appeals finds error prejudicial to the appellant, the judgment or final order of the trial court shall be reversed and the cause shall be remanded to the trial court for further proceedings").

{¶ 42} Recognizing that our rules permit appellate courts to analyze whether there was prejudicial error in a case involving a no-contest plea, the

question is how the reviewing court is to determine whether prejudice exists in such a case.

*1. The Application of Harmless-Error Review in Ohio Cases Involving No-Contest Pleas*

{¶ 43} In Ohio, a number of appellate courts have determined in the context of cases involving a defendant's no-contest plea to operating a vehicle while under the influence ("OVI"), that even if a trial court erroneously fails to suppress the results of field sobriety tests, the error is harmless when sufficient independent evidence exists to support the defendant's arrest. The majority of those cases involved a per se OVI violation based on the results of a breathalyzer test taken *after* the defendant's arrest, making probable cause to arrest the determinative issue in the case. *See, e.g.*, *State v. Hetzel*, 9th Dist. Summit No. 29399, 2020-Ohio-3437, ¶ 14-15, 18-21; *State v. Hessel*, 12th Dist. Warren No. CA2009-03-031, 2009-Ohio-4935, ¶ 4, 22; *State v. Calder*, 7th Dist. Monroe No. 08 MO 5, 2009-Ohio-3329, ¶ 2, 40, 43-47; *Gates Mills v. Mace*, 8th Dist. Cuyahoga No. 84826, 2005-Ohio-2191, ¶ 8, 29; *State v. Staten*, 4th Dist. Athens No. 03CA1, 2003-Ohio-4592, ¶ 7, 36. The Second District Court of Appeals has also applied a harmless-error analysis in the context of a no-contest OVI case in which there was no breathalyzer test taken and evidence relating to challenged field sobriety tests would have gone toward proof of general impairment. *State v. Wells*, 2d Dist. Montgomery No. 20798, 2005-Ohio-5008, ¶ 33-43.

{¶ 44} A few Ohio courts of appeals have applied a harmless-error analysis when reviewing an adverse judgment on a motion to suppress in cases involving a no-contest plea to offenses other than OVI. In *State v. Davis*, 2d Dist. Clark No. 2000-CA-16, 2000 Ohio App. LEXIS 5746, *8-10 (Dec. 8, 2000), which involved a no-contest plea to possession of drugs, the Second District concluded that even if the police seizure of vehicles was illegal because they were not specified in the warrant, the trial court's refusal to suppress the vehicles from evidence was

harmless error, because the officers observed the vehicles legally and would have been able to testify to their observations in court. In *State v. Kulyk*, 5th Dist. Guernsey No. 01 CA 13, 2002 Ohio App. LEXIS 1607, *18-19 (Apr. 1, 2002), which involved a no-contest plea to having weapons while under a disability, the Fifth District held that although the trial court should have suppressed a handgun obtained during a warrantless search, the error was harmless because the defendant had admitted to shooting the gun. In *State v. Rodriguez*, 12th Dist. Butler No. CA2014-03-073, 2015-Ohio-571, ¶ 23, the Twelfth District concluded that because a minor-misdemeanor drug-possession charge brought against the defendant was not dependent on evidence of $3,000 found in his pants pocket, the trial court's refusal to suppress that evidence was, at most, harmless error.

{¶ 45} At least one Ohio court of appeals has declined to apply a harmless-error review in similar circumstances. In *State v. Ambrosini*, 7th Dist. Mahoning Nos. 14 MA 155 and 14 MA 156, 2015-Ohio-4150, ¶ 14, the Seventh District noted the "important strategic implication of a no contest plea" in that it allows a defendant to appeal an adverse ruling on a pretrial motion to suppress. The court determined that because the case involved a no-contest plea, it was "disinclined to review the trial court's error under harmless error analysis because it is impossible to assess the impact of an erroneous denial of a motion to suppress evidence on a defendant's decision to plead no contest." *Id.* at ¶ 15. The court further determined that "since a trial never took place, [its] inquiry would be entirely speculative since [it could not] know exactly what evidence would be presented at trial." *Id.*

2. *The Application of Harmless-Error Review in Federal Cases Involving No-Contest Pleas*

{¶ 46} Federal appellate courts have taken a variety of approaches when reviewing for harmless error in cases involving conditional pleas of no contest or guilty that were entered to preserve a challenge to a ruling on a pretrial motion under Fed.R.Crim.P. 11(a)(2).

**{¶ 47}** Notably, Fed.R.Crim.P. 11(a)(2) explicitly provides that "[a] defendant who prevails on appeal [under such circumstances] shall be allowed to withdraw the plea." The Sixth Circuit has addressed the question whether remand is required when such a defendant prevails only partially on appeal, i.e., when the appellate court determines that the motion to suppress should have been granted in part but was correctly denied in part. *See generally United States v. Leake*, 95 F.3d 409 (6th Cir.1996). The court in *Leake* held that the defendant in that case had to prevail because he was successful in excluding "what appear[ed] to be the most damning evidence against him." *Id.* at 420. Although it did not explicitly conduct a harmless-error analysis, the court cautioned:

> We do not mean to imply that every time a defendant manages to exclude any evidence on appeal following a conditional plea of guilty, he is entitled to withdraw his plea. The inquiry requires an examination of the degree of success and the probability that the excluded evidence would have had a material effect on the defendant's decision to plead guilty.

*Id.* at 420, fn. 21.

**{¶ 48}** Two circuit courts of appeals have followed the Sixth Circuit's decision in *Leake*. *See United States v. Payton*, 745 F.3d 546, 557 (D.C.Cir.2014) (holding that the evidence that should have been suppressed "undermine[d]" one of the charges to which the defendant pleaded guilty, creating a high probability that the failure to suppress that evidence had a material effect on the defendant's decision to plead guilty); *United States v. Latz,* 162 Fed.Appx. 113, 121-122 (3d Cir.2005) (noting that a defendant "prevails on appeal" only when the defendant persuades the appellate court to exclude a piece of evidence that is "material to his

case," but concluding that the erroneously admitted evidence in that case was "entirely cumulative" of other evidence and therefore not material).

{¶ 49} Other circuit courts of appeals have applied tests slightly different from that employed by the Sixth Circuit, but those courts agree that harmless error-review is appropriate when considering the impact of an erroneous suppression decision. *See, e.g.*, *United States v. Willingham*, 310 F.3d 367, 372 (5th Cir.2002); *United States v. Lustig*, 830 F.3d 1075, 1087 (9th Cir.2016); *United States v. Benard*, 680 F.3d 1206, 1213-1214 (10th Cir.2012); *United States v. Schulz*, 486 F.Appx. 838, 843 (11th Cir.2012).

### 3. *The Trial Court's Judgment Denying LaRosa's Motion to Suppress Was Erroneous in Part, but the Error Was Harmless*

{¶ 50} We agree with the majority of the Ohio courts and the federal courts listed above that a trial court's error in ruling on a defendant's motion to suppress does not require automatic reversal of a subsequent no-contest plea. As explained above, the language of Crim.R. 12(I) indicates that in order for a defendant to prevail on appeal following his no-contest plea, the trial court's error must have been prejudicial to the defendant's decision to plead no contest. Accordingly, it is appropriate for an appellate court reviewing such an issue to conduct a prejudice analysis.

{¶ 51} Although Fed.R.Crim.P. 11(a)(2) differs slightly from our Crim.R. 12(I), the approach employed by the Sixth Circuit for determining whether a trial court's erroneous decision on a motion to suppress affected the defendant's decision to plead no contest is helpful in reviewing cases like the one currently before us: "The inquiry requires an examination of the degree of success and the probability that the excluded evidence would have had a material effect on the defendant's decision to plead guilty." *Leake*, 95 F.3d at 420, fn. 21.

{¶ 52} In applying the Sixth Circuit's approach, we acknowledge that it must be applied carefully. Conducting a harmless-error review for suppression

errors that preceded a no-contest plea involves considerations different from those for conducting the same review following a trial. Courts often will not have a full picture of the evidence following a hearing on a motion to suppress, and it is difficult to ascertain the extent to which an erroneous judgment on a suppression motion might have impacted the defendant's decision to plead no contest. It is also important to remember that when an alleged error is properly preserved, the state has the burden of proving beyond a reasonable doubt the absence of prejudice, which would likely be difficult to establish in most appeals stemming from a suppression ruling and subsequent no-contest plea, particularly when the court does not have a sufficient picture of the existing evidence to help it make that determination. Indeed, regarding no-contest pleas, it might be the rare case in which a judgment erroneously denying a motion to suppress is determined to be harmless error.

{¶ 53} LaRosa's "degree of success" on appeal in this case is not significant. *Id*. Even if the trial court had suppressed the evidence of LaRosa's socks and underwear, the suppression of those items alone would not have had a "material effect" on his decision to plead no contest, as they are largely duplicative of other evidence, *id*.

{¶ 54} A report prepared by the Bureau of Criminal Investigation ("BCI") was admitted into evidence at the suppression hearing. The report contains no test results regarding LaRosa's socks, but it reveals that the victim's blood was on LaRosa's shirt and shoes. So it cannot reasonably be said that the presence of apparent blood on LaRosa's socks would have had significant, additional evidentiary value. A bloodstain on LaRosa's underwear was tested and contained the victim's DNA. But the DNA evidence obtained from LaRosa's underwear is duplicative of the DNA evidence that was lawfully obtained through a swab of LaRosa's penis that revealed the presence of the victim's DNA on his genitals.

{¶ 55} We conclude that the trial court's failure to suppress the socks and underwear would not have had a material impact on LaRosa's decision to plead no contest, given that the victim's DNA was also found on LaRosa's penis, on the scrapings of his fingernails, and his other clothing items. Contrary to the dissenting opinion's contention, we do not reach this conclusion based on any claim that the evidence against LaRosa is "overwhelming." Dissenting opinion at ¶ 79. Our conclusion that the suppression of the socks and underwear would not have materially affected LaRosa's decision to plead no contest is compelled by the fact that this evidence is wholly duplicative of other evidence in the record. *See, e.g.*, *Latz*, 162 Fed.Appx. at 121-122 (evidence that should have been suppressed was not material because it was "entirely cumulative" of other evidence). Indeed, the dissenting opinion does not effectively dispute the fact that the evidentiary value of these items is limited in light of other, duplicative evidence that is available to the state.

{¶ 56} Based on the particular facts of this case, we conclude that even if the evidence in question had been suppressed, the exclusion of the evidence would not have had a material effect on LaRosa's decision to plead no contest to the charges. We accordingly conclude that the trial court's erroneous denial of LaRosa's motion to suppress with respect to the socks and underwear was harmless.

### III. CONCLUSION

{¶ 57} For the reasons stated above, we conclude that the trial court did not err in denying LaRosa's motion to suppress as to the hospital's washcloth and the scrapings taken from LaRosa's fingernails. Although we conclude that the trial court did err in denying the motion to suppress as to LaRosa's socks and underwear, we conclude that the error was harmless. We accordingly affirm the judgment of the Eleventh District Court of Appeals.

Judgment affirmed.

O'CONNOR, C.J., and KENNEDY and DEWINE, JJ., concur.

DONNELLY, J., concurs in part and dissents in part, with an opinion joined by STEWART and BRUNNER, JJ.

———————————

**DONNELLY, J., concurring in part and dissenting in part.**

{¶ 58} I concur with the majority opinion's determination that the seizure of the hospital's washcloth and the scrapings of appellant Jacob LaRosa's fingernails did not violate the Fourth Amendment to the United States Constitution. I also concur with its determination that the seizure of LaRosa's socks and underwear did violate the Fourth Amendment. I dissent, however, from the majority opinion's determination that the admission of the evidence obtained in violation of the Fourth Amendment was harmless error under Crim.R. 52(A).

{¶ 59} The fundamental problem here is that there has been no evidence of guilt admitted into this case record. All we have is (1) the testimony and exhibits from the pretrial hearing on LaRosa's motion to suppress the evidence allegedly seized in violation of the Fourth Amendment and (2) the prosecutor's unsworn recitation of the evidence that the state *would* present if the case proceeded to trial, made solely to establish a factual basis for LaRosa's no-contest plea.

{¶ 60} Yet, despite the majority's vindicating LaRosa's appeal in part by recognizing that the unlawful seizure of the allegedly incriminating socks and underwear compels their exclusion from evidence at trial, the majority decides not to remand this case to the trial court for further proceedings. Instead, the majority elects to apply what it ascribes as harmless-error analysis, concluding with certainty that the exclusion of the illegally seized evidence would not have had a " 'material effect,' " majority opinion at ¶ 51, quoting *United States v. Leake*, 95 F.3d 409, 420 (6th Cir.1996), fn. 21, on LaRosa's decision to plead no contest—a plea that he entered only after the trial court denied his motion to suppress in its entirety—rather than exercising his constitutional right to require the state to prove his guilt at trial

without the illegally seized evidence. Badly misapplying the harmless-error test here, the majority summarily affirms LaRosa's convictions on the basis of proffered evidence that might have, but has never been, presented at trial.

{¶ 61} Because I believe that the majority's unwarranted application of harmless-error analysis here is woefully ill-considered, wholly disruptive to the right to appeal a select category of pretrial rulings following a no-contest plea, and fundamentally incompatible with LaRosa's right to due process of law, I dissent.

## I. The state's harmless-error argument was not raised in the court of appeals below and was therefore waived

{¶ 62} Stating that this court generally " ' "will not consider arguments that were not raised in the courts below," ' " majority opinion at ¶ 34, quoting *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, ¶ 67, quoting *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio St.3d 274, 279, 617 N.E.2d 1075 (1993), the majority appropriately declines to consider the state's "plain view" argument that was not raised below and was raised for the first time in its merit brief to this court.

{¶ 63} But the state's harmless-error argument was not raised below and likewise was raised for the first time in its merit brief to this court. Unable to dispute that fact, the majority suggests that LaRosa raised the issue: "He avers that there is a reasonable possibility that the denial of his suppression request as to all the challenged evidence contributed to his decision to enter a no-contest plea." Majority opinion at ¶ 36. But LaRosa has made no such averment in this case. Consistent with the single proposition of law that we agreed to review, he has argued only that the state's seizure of his personal items from his hospital room without his consent or a warrant violated his rights under the Fourth Amendment. By any measure, the majority opinion manufactures a reason to address and in fact

determine this appeal and LaRosa's case on the basis of that previously unasserted argument.

{¶ 64} "Justice is served by the consistent and methodical application of the law." *State v. Tijerina*, 3d Dist. Defiance No. 4-02-01, 2002-Ohio-2979, ¶ 11. In my view, we should be consistent by not considering an argument that the state did not raise below, that LaRosa had no opportunity to challenge below, and that LaRosa most assuredly did not raise here. Because the state failed to raise its harmless-error argument before now, I believe that the argument was waived and that we should decline to consider it here.

## II. The majority misapplies the harmless-error rule in this case

{¶ 65} The majority says that to the extent that the trial court's judgment denying LaRosa's motion to suppress was erroneous, that error may be disregarded as harmless under Crim.R. 52(A) because it did not affect a substantial right. Stating that LaRosa's potential " 'degree of success' " in withdrawing his no-contest plea "is not significant," the majority concludes that the trial court's failure to suppress LaRosa's socks and underwear was not prejudicial error insofar as it would not have had a " 'material effect' " on LaRosa's decision to plead no contest. Majority opinion at ¶ 53, quoting *Leake*, 95 F.3d at 420, fn. 21. The majority's application of the harmless-error rule in this case is profoundly troubling in at least three respects.

### A. *The majority misapplies the harmless-error rule*

{¶ 66} The majority's application of the harmless-error rule is woefully misguided here because there has been no presentation of evidence demonstrating LaRosa's guilt. To the contrary, the record before us includes the testimony and exhibits from the hearing on LaRosa's motion to suppress. Under Crim.R. 12(C), a pretrial motion to suppress evidence alleged to have been obtained illegally serves to resolve prior to trial an evidentiary issue "that is capable of determination *without*

*the trial* of the general issue." (Emphasis added.) *See also Defiance v. Kretz*, 60 Ohio St.3d 1, 3-4, 573 N.E.2d 32 (1991) (the intent of Crim.R. 12 "is to determine matters before trial when possible").

**{¶ 67}** But the scope of the suppression hearing here was necessarily limited to resolving whether evidence was seized in violation of the Fourth Amendment. The issue was not whether the seized evidence proved LaRosa's guilt beyond a reasonable doubt, nor was the suppression hearing the appropriate forum in which to address that issue. Testimony and other evidence submitted during the hearing concerning the legality of the seizures here was not substantive evidence for the purpose of determining LaRosa's guilt.

**{¶ 68}** The record here additionally includes the prosecutor's narrative recitation of the evidence that the state would present if the case had proceeded to trial, apparently made to establish a factual basis for LaRosa's no-contest plea.[1] But the prosecutor's narrative recitation of what the evidence at trial might have included was not itself *evidence*.

**{¶ 69}** Indeed, Ohio trial-court judges routinely admonish jurors that the evidence is comprised of "all the testimony received from the witnesses * * * and the exhibits admitted during the trial," *Ohio Jury Instructions*, CR Section 409.01(1) (Rev. Aug. 17, 2011); that the evidence generally does not include any statement made by counsel during trial, including during opening statements and closing arguments, *id.* at CR Section 409.01(6); that jurors have a duty to carefully consider and weigh all the evidence to decide disputed questions of fact without bias, sympathy, or prejudice, *Ohio Jury Instructions*, CR Section 425.35(2) (Rev. Feb. 1, 2020); and that jurors may not "form or express any opinion on th[e] case

---

1. That narrative recitation was not even required in this felony case. Unlike a misdemeanor case in which a factual basis for a no-contest plea is required, *see* R.C. 2937.07, no such factual basis is required by statute or procedural rule for a no-contest plea in a felony case. *See State v. Huffman*, 3d Dist. Hancock No. 5-19-37, 2020-Ohio-1062, ¶ 8; *State v. Wilson*, 2018-Ohio-902, 108 N.E.2d 517, ¶ 46 (11th Dist.); *State v. Dobbs*, 2d Dist. Greene No. 2009CA70, 2010-Ohio-3649, ¶ 39-40.

until it is finally submitted to [them]," *Ohio Jury Instructions*, Section CR 401.09(1) (Rev. Feb. 20, 2010). In seeming disregard of those admonitions, the majority appears to accept willingly the state's narrative recitation of the proposed evidence as proof positive of LaRosa's guilt. But the majority's erroneous application of the harmless-error rule here goes even beyond the mere absence of any admitted evidence establishing LaRosa's guilt.

{¶ 70} Because this court's decision today recognizes that the trial court erred in denying LaRosa's motion to suppress as to his seized socks and underwear, the state bears the burden under Crim.R. 52(A) of demonstrating that the error was harmless, i.e., that it did not affect LaRosa's substantial rights. *See State v. Graham*, 164 Ohio St.3d 187, 2020-Ohio-6700, 172 N.E.3d 841, ¶ 55; *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 15. Whether LaRosa's substantial rights were affected depends on whether the error was prejudicial, i.e., whether it " 'affected the outcome of the [trial] court proceedings.' " (Brackets added in *Fisher.*) *State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, ¶ 7, quoting *United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *see also State v. Jones*, 160 Ohio St.3d 314, 2020-Ohio-3051, 156 N.E.3d 872, ¶ 18.

{¶ 71} In that regard, the majority acknowledges that under Crim.R. 12(I), a plea of no contest "does not preclude a defendant from asserting upon appeal that the trial court prejudicially erred in ruling on a pretrial motion, including a pretrial motion to suppress evidence." The majority nevertheless concludes that the trial court did not prejudicially err in denying LaRosa's motion to suppress his socks and underwear because his eventual "degree of success" in suppressing that contested evidence was not "significant," declaring imperiously that "the suppression of those items alone would not have had a 'material effect' on his

decision to plead no contest, as they are largely duplicative of other evidence." Majority opinion at ¶ 53. I strongly disagree.[2]

{¶ 72} The state clearly intended to use the seized socks and underwear—LaRosa's own clothes—as incriminating evidence against him. And the trial court's erroneous denial of LaRosa's motion to suppress those items unmistakably impacted the outcome of the trial-court proceedings: LaRosa's subsequent no-contest plea was the only avenue available for him to contest the pretrial suppression ruling before the evidence was presented against him in his criminal trial. I do not see how the majority can fairly say that LaRosa's no-contest plea was unaffected by the trial court's ruling allowing his own clothes to be offered as substantive evidence against him at trial.

{¶ 73} Perhaps more disturbingly, the majority blithely usurps LaRosa's right to decide for himself whether, after having been partially vindicated in his Fourth Amendment challenge, he would change his no-contest plea and thus require the state to prove his guilt properly at trial without the illegally seized evidence or, alternatively, whether he would reassess his plea options. Notwithstanding the majority's speculative supposition that LaRosa would not change his no-contest plea, because of its apparent belief that he would be convicted at trial based on the other evidence the majority has seemingly prejudged to be overwhelming, I fail to understand how the majority may legitimately make this critically personal and fundamental decision for him and without him.

{¶ 74} The Ohio case authorities cited by the majority do not support its application of the harmless-error rule in this case. For instance, many hold only that no prejudicial error occurred when probable cause to arrest for impaired driving

---

2. To the extent that the majority puts the burden on LaRosa to establish that he was prejudiced by the trial court's refusal to suppress the illegally seized socks and underwear, it tacitly relieves the state of its burden under Crim.R. 52(A) to demonstrate that the trial court's error did not affect LaRosa's substantial rights, thus improperly shifting the burden to LaRosa.

existed even without a contested field sobriety test.[3] In other instances, no prejudicial error occurred when the defendant's conviction did not depend on the disputed evidence.[4]

{¶ 75} By contrast, in *State v. Ambrosini*, 7th Dist. Mahoning Nos. 14 MA 155 and 14 MA 156, 2015-Ohio-4150, ¶ 15, the court of appeals determined that harmless- error analysis under Crim.R. 52(A) was inapplicable, stating with persuasive force the following: "[I]t is impossible to assess the impact of an erroneous denial of a motion to suppress evidence on a defendant's decision to plead no contest. Additionally, since a trial never took place, our inquiry would be entirely speculative since we cannot know exactly what evidence would be presented at trial."

{¶ 76} Federal case authorities addressing the "conditional plea" provision in Fed.R.Crim.P. 11(a)(2) likewise do not support the majority's application of the harmless-error rule in this case.[5] They recognize that an error is harmless only if the government proves beyond a reasonable doubt that the erroneously denied suppression motion did not contribute to or have a material effect on the defendant's

---

3. *See, e.g.*, *State v. Hessel*, 12th Dist. Warren No. CA2009-03-031, 2009-Ohio-4935, ¶ 22-23; *State v. Calder*, 7th Dist. Monroe No. 08 MO 5, 2009-Ohio-3329, ¶ 40-47; *State v. Wells*, 2d Dist. Montgomery No. 20798, 2005-Ohio-5008, ¶ 34-43; *Gates Mills v. Mace*, 8th Dist. Cuyahoga No. 84826, 2005-Ohio-2191, ¶ 27-29; *State v. Staten*, 4th Dist. Athens No. 03CA1, 2003-Ohio-4592, ¶ 36.

4. *See, e.g.*, *State v. Hetzel*, 9th Dist. Summit No. 29399, 2020-Ohio-3437, ¶ 18-21 (conviction for operating a vehicle while under the influence did not depend on disputed breathalyzer test); *State v. Rodriguez*, 12th Dist. Butler No. CA2014-03-073, 2015-Ohio-571, ¶ 23 (drug-possession conviction did not depend on illegally seized cash); *State v. Kulyk*, 5th Dist. Guernsey No. 01 CA 13, 2002-Ohio-1591, ¶ 39 (illegal seizure of handgun immaterial to weapons-under-disability conviction because defendant admitted to firing the gun); *State v. Davis*, 2d Dist. Clark No. 2000-CA-16, 2000 WL 1803626, *3 (Dec. 8, 2000) (illegal seizure of vehicle immaterial to drug-possession conviction because officers lawfully observed expensive vehicles).

5. Fed.R.Crim.P. 11(a)(2) provides: "With the consent of the court and the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion. A defendant who prevails on appeal may then withdraw the plea."

decision to plead and that the error will not be deemed harmless and the defendant must be allowed to vacate the plea on remand if there is a reasonable possibility that the error contributed to or had a material effect on the defendant's decision to plead. *See, e.g.*, *United States v. Lustig*, 830 F.3d 1075, 1085-1092 (9th Cir.2016); *United States v. Peyton*, 745 F.3d 546, 557 (D.C.Cir.2014); *United States v. Benard*, 680 F.3d 1206, 1212-1215 (10th Cir.2012); *Leake*, 95 F.3d at 419-420. That the defendant may have been only partially successful does not mean that the erroneous ruling did not contribute to the plea decision because we cannot know how the altered bargaining positions might affect a decision to plead. *Lustig* at 1087-1090; *Benard* at 1212-1215; *Leake* at 420.

{¶ 77} Because there is no basis on which to conclude that the trial court's erroneous failure to suppress LaRosa's socks and underwear did not contribute to or have a material effect on LaRosa's decision to plead no contest, there is no factual or legal basis to apply the harmless-error rule to this no-contest plea.

*B. The majority's misapplication of the rule is inimical to appellate review*

{¶ 78} The decision rendered here will be wholly disruptive to the ability of criminal defendants to obtain appellate review over a select category of pretrial motion rulings. A plea of no contest is not an admission of the defendant's guilt but is an admission of the truth of the facts alleged in the indictment. *See* Crim.R. 11(B)(2). Unlike a valid guilty plea by a counseled defendant that generally waives the right to appeal all prior nonjurisdictional defects, including the denial of a motion to suppress, a no-contest plea does not generally preclude a defendant from asserting on appeal that the trial court prejudicially erred in ruling on a pretrial motion, including a motion to suppress evidence. *State v. Beasley*, 152 Ohio St.3d 470, 2018-Ohio-16, 97 N.E.3d 474, ¶ 15. The import of Crim.R. 12(I) is thus to preserve, not waive, the right to appeal pretrial rulings, with no distinction being made between negotiated no-contest pleas and non-negotiated no-contest pleas.

*See State v. Luna*, 2 Ohio St.3d 57, 58, 442 N.E.2d 1284 (1982) (applying former Crim.R 12(H)).

{¶ 79} Yet, after today's decision, a defendant's plea of no contest entered solely to appeal a select category of pretrial rulings—including but by no means limited to searches and seizures in alleged violation of the Fourth Amendment and self-incriminating statements allegedly obtained in violation of the Fifth Amendment—may be given only illusory judicial relief at best. By finding that the trial court's error here was harmless based on its belief that the other (as yet unpresented) evidence was so overwhelming, the majority makes no-contest pleas indistinguishable from fully counseled guilty pleas, as both will be ineffective to vindicate erroneous pretrial suppression rulings.

{¶ 80} Indeed, today's decision creates a disincentive to pursue such appeals because a "successful appeal" will not necessarily be a successful appeal. Pursuing such an appeal may effectively give rise to a forfeiture of the defendant's right to be tried and convicted only on proof beyond a reasonable doubt. After today's decision, criminal defendants who enter a no-contest plea just to appeal an adverse pretrial suppression ruling will have to understand not only that they may lose if they lose but also that they may lose even if they win. And pity the criminal-defense attorney who must advise a client of the risks and perhaps illusory benefits of pleading no contest just to uphold fundamental constitutional protections.

{¶ 81} The practical consequence of today's decision may be fewer no-contest pleas and more criminal trials. The tragic consequence may be irreparable damage to the vindication of rights and liberties guaranteed by the Constitution. Neither is warranted by the majority's regrettable rush to final judgment.

*C. The majority's misapplication of the rule needlessly deprives LaRosa of due process of law*

{¶ 82} The majority's misapplication of the harmless-error rule here ultimately and needlessly deprives LaRosa of due process of law. We know that when a judgment is reversed on appeal and remanded for further proceedings, the lower court is generally required to proceed from the point at which the error occurred. *See Armstrong v. Marathon Oil Co.*, 32 Ohio St.3d 397, 418, 513 N.E.2d 776 (1987); *State ex rel. Stevenson v. Murray*, 69 Ohio St.2d 112, 113, 431 N.E.2d 324 (1982); *Commrs. of Montgomery Cty. v. Carey*, 1 Ohio St. 463, 466 (1853).

{¶ 83} Because the error here occurred when the trial court fully denied LaRosa's pretrial motion to suppress, a remand for further proceedings would ordinarily require the trial court to resume the proceedings at that error point—prior to the entry of LaRosa's appeal-facilitating no-contest plea—by granting LaRosa's motion to suppress the illegally seized socks and underwear. With the case in that procedural posture, the parties could then recalibrate their respective bargaining positions and decide whether to resolve the case by plea or proceed to trial.

{¶ 84} But through its misapplication of the harmless-error rule, the majority forgoes any remand and instead upholds a criminal conviction on the basis of untested evidence that *might* have been presented at a criminal trial. By any fair measure, the majority today redresses the violation of LaRosa's Fourth Amendment rights by functionally depriving him of the fundamental trial rights guaranteed by the Fifth, Sixth, Seventh, and Fourteenth Amendments to the United States Constitution.

{¶ 85} In my view, the correct disposition of this case would be to reverse the court of appeals' and trial court's judgments regarding the suppression of the socks and underwear and remand the case to the trial court for further proceedings. Indeed, there would be nothing remarkable about that disposition. LaRosa

assuredly would not get a free pass. This case involves very serious criminal charges and LaRosa should have to face the music for them. But both he and the state deserve the opportunity to reassess their respective positions with a clear understanding of the evidence that may and may not be used at trial.

{¶ 86} I am therefore at a loss to understand how the majority can foreclose further proceedings on remand through its misapplication of the waived harmless-error rule in a way that arrogates to the court LaRosa's fundamental personal right to decide whether to stand by or vacate his no-contest plea, undermines the right to appeal adverse pretrial suppression rulings, and denies substantial justice. I therefore dissent from the majority's decision to affirm the court of appeals' judgment based on harmless error.

STEWART and BRUNNER, JJ., concur in the foregoing opinion.

_____

Dennis Watkins, Trumbull County Prosecuting Attorney, and Christopher Becker and Asleigh Musick, Assistant Prosecuting Attorneys, for appellee.

Maro & Schoenike Co. and Lynn A. Maro, for appellant.

_____