[Cite as *State v. Hayes*, 2024-Ohio-1254.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-230437 |
| | | TRIAL NO. B-2200211 |
| Plaintiff-Appellant, | : | |
| vs. | : | *O P I N I O N.* |
| RACHEL HAYES, | : | |
| Defendant-Appellee. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: April 3, 2024

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Philip R. Cummings*, Assistant Prosecuting Attorney, for Plaintiff-Appellant,

*Raymond T. Faller*, Hamilton County Public Defender, and *Lora Peters*, Assistant Public Defender, for Defendant-Appellee.

**CROUSE, Judge.**

**{¶1}** The state appeals from the trial court's order granting defendant-appellee Rachel Hayes's motion to suppress evidence collected by police while she was a patient at Bethesda North Hospital. For the following reasons, based on the authority of *United States v. Jacobsen*, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984), we reverse the trial court's judgment and remand the cause for further proceedings.

## I. Factual and Procedural History

**{¶2}** In October 2021, Hayes was admitted to Bethesda North Hospital for COVID-19. During a routine inventory of Hayes's belongings, a nurse found a baggie that she believed contained illegal drugs. The nurse alerted hospital security, who called the police. A police officer conducted a warrantless search of Hayes's belongings and found the baggie. Hayes was subsequently indicted for aggravated trafficking in drugs in violation of R.C. 2925.03(A)(2) and aggravated possession of drugs in violation of R.C. 2925.11(A). Both offenses are second-degree felonies. Hayes filed a motion to suppress, which the trial court granted following a hearing.

**{¶3}** At the suppression hearing, the police officer who conducted the search testified that the security guard handed the officer a clutch purse and said either, "This is the drugs," or "This is the meth." The officer testified that he looked inside the purse and saw that "there was clearly methamphetamine, based on my training and experience."

**{¶4}** The trial court found the following facts:

An admitting nurse went through Ms. Hayes'[s] belongings to find her phone and take inventory of her items. The nurse testified that this practice is a routine admitting practice at the hospital to avoid liability

for lost items. During inventory, the nurse found a clear baggy containing a white substance, which the nurse thought was drugs. After finding the baggy in Ms. Hayes['s] belongings, the nurse immediately called hospital security and handed security Ms. Hayes's backpack. Before giving security the backpack, the nurse returned the items she found and put them in the backpack.

Hospital security notified Montgomery Police, and a police officer arrived at the hospital. Once the officer arrived, hospital security turned over Ms. Hayes's belongings to the police who then searched the purse and discovered the above-mentioned items [the drugs, clear plastic bags, a lid from a digital scale, and $847 in cash]. The officer testified that the security officer handed the officer a clutch purse. The officer then looked inside the purse and pulled out a baggy of drugs. Security also told the officer that he found cash in Ms. Hayes's belongings which he put back in the backpack. Officers never obtained a warrant to search Ms. Hayes'[s] purse, nor did they obtain her consent to search.

{¶5} At the suppression hearing, the state conceded that the police had not obtained a search warrant for Hayes's purse or backpack. The state argued that the warrantless search was reasonable under the Fourth Amendment because the original violation of Hayes's privacy was conducted by private actors, the nurse and security guard, and the subsequent governmental search did not exceed the scope of the private search. The trial court rejected the state's argument and held that "the scope of the search was unlawful when the officer searched the property of Ms. Hayes, as it went above and beyond the original scope of the search [of the nurse and security guard]."

The state timely appealed.

## II. Analysis

{¶6}     In its sole assignment of error, the state contends that the trial court erred in granting Hayes's motion to suppress the evidence collected from her purse and backpack during her stay at the hospital.

{¶7}     In accordance with the Fourth Amendment's protections against unreasonable searches and seizures, the state must establish by the preponderance of the evidence that a defendant's property was not subject to illegal search or seizure. *State v. LaRosa*, 165 Ohio St.3d 346, 2021-Ohio-4060, 179 N.E.3d 89, ¶ 16. "Appellate review of a motion to suppress presents a mixed question of law and fact." *Id.* at ¶ 17, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "The reviewing court must accept the trial court's findings of fact if they are supported by competent, credible evidence, and the court reviews the trial court's legal conclusions de novo." *Id.*

{¶8}     At the suppression hearing, the state argued that the initial search was conducted by the hospital staff and thus was a private search, which cannot be a Fourth Amendment violation. *See Jacobsen*, 466 U.S. at 113, 104 S.Ct. 1652, 80 L.Ed.2d 85, quoting *Walter v. United States*, 447 U.S. 649, 662, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980) ("This Court has also consistently construed [the Fourth Amendment's] protection as proscribing only governmental action; it is wholly inapplicable 'to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.' "). The state argued that the subsequent police search did not go beyond that which was conducted by the private party, and therefore did not violate

the Fourth Amendment. *Id.* at 116, quoting *Walter* at 657 ("[T]he Government may not exceed the scope of the private search unless it has the right to make an independent search.").

{¶9} In *Jacobsen*, the Court upheld the search of a package that had been in transit through Federal Express, a private freight carrier. *Jacobsen* at 111. During shipment, the package was damaged, and Federal Express employees opened the package to examine its contents, pursuant to a company policy regarding such occurrences. *Id.* The package consisted of a cardboard box, and inside the box, the employees found a ten-inch tube made of silver tape. *Id.* Inside the tube, the employees found four plastic bags containing white powder. *Id.* The employees then contacted the Drug Enforcement Administration ("DEA"). *Id.* Before any DEA agents arrived, the Federal Express employees replaced the bags into the tube and returned the tube to the box. *Id.*

{¶10} When the first DEA agent arrived, the box had been placed on a desk. *Id.* The agent could see that a hole had been punched in the side of the box, and the top was open. *Id.* The agent removed the tube from the box, saw that the tube had been slit open, and removed the plastic bags from the tube. *Id.* The agent then opened the bags and removed a trace amount of the white powder with a knife blade. *Id.* at 111-112. A field test showed that the white powder was cocaine. *Id.* at 112.

{¶11} The *Jacobsen* Court held first that the private action of the Federal Express employees did not implicate the Fourth Amendment. *Id.* at 115. The Court went on to hold, "The additional invasions of respondents' privacy by the Government agent must be tested by the degree to which they exceeded the scope of the private search." *Id.* As the Court went on to describe, the federal agent's inspection of the

5

contents of the package "enabled the agent to learn nothing that had not previously been learned during the private search." *Id.* at 120. The Court's analysis indicates that a mere reexamination by the government agent of that which was already inspected by the private actor does not violate the Fourth Amendment. *Id.* at 119-121. "The package itself, which had previously been opened, remained unsealed, and the Federal Express employees had invited the agents to examine its contents. Under these circumstances, the package could no longer support any expectation of privacy * * *." *Id.* at 121.

{¶12} The present circumstances are highly analogous. Pursuant to hospital policy, the nurse conducted an inventory of the contents of Hayes's backpack. After discovering contraband, the nurse gave the backpack to hospital security, who summoned the police.

{¶13} While it is unclear from the trial court's findings of fact whether the contraband was in plain view or whether the police officer had to open the backpack and/or the purse to view the contraband, it ultimately does not matter. Pursuant to *Jacobsen*, if the police search does not exceed the scope of the private search, then there is no Fourth Amendment violation. Here the private search had already exposed the contents of Hayes's purse. The security guard informed the police officer of the incriminating nature of the contents of the purse, and it was reasonable for the officer to confirm the guard's assessment—without exceeding the scope of the private search. *See Jacobsen*, 466 U.S. at 119, 104 S.Ct. 1652, 80 L.Ed.2d 85 ("The agent's viewing of what a private party had freely made available for his inspection did not violate the Fourth Amendment.").

{¶14} Because the police search of Hayes's purse did not exceed the scope of

the private search, the warrantless search by the police was reasonable and did not violate the Fourth Amendment. Accordingly, we reverse the judgment of the trial court and remand the cause for further proceedings.

Judgment reversed and cause remanded.

**ZAYAS, P.J.**, and **KINSLEY, J.**, concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.