[Cite as *State v. Williams*, 2023-Ohio-3526.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

| | |
|---|---|
| STATE OF OHIO,<br>CITY OF RAVENNA, | CASE NO. 2022-P-0053 |
| Plaintiff-Appellant, | Criminal Appeal from the<br>Municipal Court, Ravenna Division |
| - vs - | |
| MATTHEW E. WILLIAMS, | Trial Court No. 2019 TRD 15327 R |
| Defendant-Appellee. | |

**O P I N I O N**

Decided: September 29, 2023
Judgment:  Affirmed

*Victor V. Vigluicci*, Portage County Prosecutor, and *Theresa M. Scahill*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellant).

*Michael A. Partlow*, P.O. Box 1562, Stow, OH 44224 (For Defendant-Appellee).


EUGENE A. LUCCI, J.

{¶1}    Appellant, the state of Ohio/city of Ravenna, appeals the judgment of the Portage County Municipal Court, Ravenna Division, dismissing an indictment filed by the Portage County Grand Jury based upon spoliation of evidence.  For the reasons discussed in this opinion, we affirm.

{¶2}    On June 24, 2019, at approximately 6:00 p.m., Trooper Megan Faith, Trooper Brian Cannon, and Sergeant Mace of the Ohio State Highway Patrol responded to an accident at the intersection of Old Forge Road and Sunnybrook Road in Brimfield Township, Portage County, Ohio.  Appellee, Matthew E. Williams, was driving a 2019

Honda CR-V. Tyler Jagiela was operating a 1980 Yamaha SR 250G motorcycle (the "motorcycle") and Sabrina Palmer, the motorcycle's owner, was a passenger on the bike. As appellee was making a left turn onto Sunnybrook Road, the CR-V was struck on the passenger side by the motorcycle. The accident resulted in the death of Mr. Jagiela and injury to Ms. Palmer.

{¶3} Trooper Faith processed the scene of the accident, taking photographs, taking measurements, and speaking with witnesses. Trooper Cannon reviewed the scene, taking photos and forensically mapping it for accident reconstruction purposes.

{¶4} The motorcycle was towed from the accident scene by a towing company, Complete Towing, at the request of the Ohio State Highway Patrol. The state asserted there was no hold placed on the motorcycle because, according to Troopers Faith and Cannon, after processing the scene, they did not need the bike for assistance in further accident reconstruction. Although the troopers testified no hold was on the motorcycle, the state and defense stipulated that the vehicle remained at Complete Towing from June 24, 2019 until March 5, 2020.

{¶5} The CR-V was towed from the accident scene by a different towing company, John's Towing. The record indicates, the State Patrol placed a verbal hold on the CR-V, but released the vehicle on July 31, 2019.

{¶6} On July 22, 2019, counsel for appellee sent a formal email to Victor V. Vigluicci, the Prosecuting Attorney for Portage County. The email acknowledged that both vehicles involved in the accident may have been "released" by the Highway Patrol. Counsel, however, requested the prosecutor's office to take the steps necessary to preserve the motorcycle. Counsel asserted that appellee "would likely want an

2

independent examination of the subject vehicle." The correspondence concluded by providing Mr. Vigluicci with the pertinent facts relating to the accident, including the date, location, responding police agencies, the decedent's name, the motorcycle's make and model, as well as the motorcycle's vehicle identification number and license plate number. Nothing in the record indicates the state acknowledged or responded to the preservation letter.

{¶7} Appellant was subsequently indicted on November 4, 2019 and charged with vehicular homicide, a first degree misdemeanor; vehicular manslaughter, a second degree misdemeanor; negligent assault, a third degree misdemeanor; and failure to yield, a minor misdemeanor. The motorcycle was eventually released in March 2020, partially disassembled.

{¶8} At a pretrial hearing on September 8, 2020, the following exchange took place between the trial court, the prosecutor, and defense counsel:

> THE COURT: I got to ask a question, by the way. Where is the motorcycle?
>
> [Prosecutor]: So we were able to track it down and I would - - first, for the record, the motorcycle was ordered released within three days of the incident by O.S.P. The letter written by Mr. Conway [defense counsel] I believe was dated July 22nd, which was a little over a month after the incident and about a month from the time the motorcycle was released.
>
> Once the motion for spoliation was filed, we sent investigators out to try to locate the motorcycle for Mr. Conway. We weren't able to do so. I have pictures. I told Mr. Conway this morning I have pictures of it. We were able to locate it Thursday afternoon, late Thursday afternoon. The motorcycle is on the property of the parents of the decedent. It's on a back part of the property. It's in a barn I guess, for lack of [a] better term, back there. If Mr. Conway would like to go inspect it, the State, of course, would have no objection. I don't know what the evidentiary value of that would be having it been - - having

3

some chain of custody issues. But if you'd like to go look at the motorcycle the State has no issue with that.

THE COURT: Are you telling me that this allegedly occurred on June 24th, '19. On June 27th, '19 that motorcycle was released to the decedent's family? Three days later?

[Prosecutor]: Trooper Cannon said within three days. He's here to testify to that fact. But he said it's - - he's here. He'll testify that in these sort of cases they take pictures that we then give to the defendant. That they inspect the motorcycle and then within three days it's common practice for O.S.P to release the motorcycle.

THE COURT: Yeah.

[Prosecutor]: He said usually it's the next day, but he can't say for sure in this case it was the next, but it was certainly within three days.

THE COURT: They probably ought to change that policy. But - - but let –

* * *

THE COURT: When the prosecutor got this letter July - - dated July 22nd, '19 from Thomas Conway, Attorney, so I'm guessing he probably got it maybe - - I don't know if the mail - - was the mail running slow then? Maybe not. It's running slow now. That's what they all say. So say he got this letter three or four days later on July 26th, '19. Did the prosecutor or your office then call up the State trooper and say, "Hey get the motorcycle back. This gentleman, Mr. Conway wants to have an expert take a look at it." I assume the answer to that is no?

[Prosecutor]: I don't know the answer to that, but I know the motorcycle was already gone by that point.

THE COURT: But I don't understand. Do you understand or can you explain why once this letter was received by the Portage County Prosecutor's Office that a phone call wouldn't have been made to the trooper and say, "Hey, we need - - this - - this motorcycle can't sit in a barn somewhere. We need this thing back."

4

[Prosecutor] Well, the motorcycle was already released, so out of our control at that point.

THE COURT: No. I know. But why wouldn't you make - - wouldn't your office not make a phone call to say, "Hey, we want it back in our control. Go get the thing." No? Can you explain why it didn't happen, I guess?

[Prosecutor]: Well, once the motorcycle is released we can't say for sure if it's been altered or not, so it creates evidentiary issues.

THE COURT: Right. Of course. O.K. Now you get a chance to respond * * *.

MR CONWAY: In regards to the motorcycle, as this Court accurately points out, the letter I sent to the County Prosecutor was sent out on 7/22/19. The indictment in this case, Judge, didn't get reported out until November 4th, 2019.

THE COURT: That's correct.

MR CONWAY: And from the time I wrote the letter to date, I have been formally and informally inquiring about the motorcycle. Formally when I wrote the prosecutor a letter. Informally in this Court since this case has begun I've had conversations with the prosecutor and I've sent a letter to the prosecutor.

To that effect, on May 8th, 2020, Judge Fankhauser, I want you to know that I wrote a letter to the Assistant Prosecutor in this case. And it said, "pursuant to your request of March 3rd, 2020, I emailed you a copy of a letter I emailed to Prosecutor Vic Vigluicci dated July 22, 2019 regarding the above-referenced matter. Said letter contained detailed information regarding the accident associated with this case number. The singular purpose of said letter was to request the State to take the necessary steps to preserve the motorcycle driven by one of the victims in the above-referenced matter. Upon receipt of this correspondence, please advise the undersigned of the status subject of the motorcycle. So the letter in July of 2019. Another letter that references a - - a March 3rd date where we had an oral conversation about it. And a letter dated May 8th, still not knowing anything about the motorcycle.

5

This Honorable Court ought to know the first time I found this news about the fact that the motorcycle was supposedly turned over, before I wrote the letter, was Friday of last week on a spoliation response motion. So what is that? That's July to July is 12.

* * *

MR CONWAY: Thirteen or fourteen months later. That's the history of the motorcycle and the - - and this morning in a crevice in the side of the court hallway I learned that it's been stowed away at someone related to the driver of the vehicle or someone related to the passenger of the vehicle at their house and that pieces and parts have been removed to include, I believe I was told, the handlebars and/or front fork was removed and the State felt sure that it had not sat protected and that's where it's at. The whereabouts of which I still don't know on the 8th day of September, 2020.

{¶9} The matter was set for a hearing regarding which party had the burden of proof for purposes of the hearing on spoliation of evidence. After the hearing, the trial court issued a judgment entry concluding the burden shifted from appellee to the state to demonstrate the destroyed evidence was not materially exculpatory. In support, the court initially observed that the Ohio State Highway Patrol failed to follow its written policy as it relates to disposal of evidence/recovered property. The trial court also found that a defense motion requesting a court order to preserve the evidence and not release the motorcycle was unnecessary to put the state on notice; instead, the court determined, defense counsel's letter was sufficient.

{¶10} The court further found that the evidence demonstrated the state lost track of or misplaced the motorcycle for several months, and it was eventually found on September 3, 2020. The court also found the motorcycle was not in substantially the same condition on September 3, 2020 as it was when it was released from the scene on June 24, 2019. And the court determined the circumstances could have been avoided if

6

Case No. 2022-P-0053

the state and the Ohio State Highway Patrol followed procedures put in place as it relates to evidence and recovered property.

{¶11} Appellee's motion to dismiss for spoliation proceeded to hearing. After receiving evidence, the trial court determined that the area of the incident was a crime scene and the Ohio State Highway Patrol erred in treating the vehicles involved as "recovered property" rather than potential evidence of a crime. The court found that the motorcycle was potentially useful to appellee's defense and the state's justifications for failing to place a hold on the evidence, when appellee's liberty is at risk, were neither persuasive nor sufficient. In light of its findings, the court concluded appellee's due-process right to prepare a defense to the charges was significantly compromised. As a result, the trial court granted the motion to dismiss. This state's appeal now follows.

{¶12} The state assigns the following as error:

{¶13} "The trial court erred by dismissing the charges against Mr. Williams based on an allegation of spoliation of evidence."

{¶14} A trial court's ruling on a pretrial motion to dismiss a criminal indictment is subject to a mixed standard of review. *See State v. Clemons,* 4th Dist. Highland No. 12CA9, 2013-Ohio-3415, ¶ 6 ("Appellate review of a trial court's decision regarding a motion to dismiss involves a mixed question of law and fact."). We review a trial court's legal conclusions in ruling on a pretrial motion to dismiss criminal charges de novo. *State v. Frasure*, 11th Dist. Ashtabula No. 2007-A-0033, 2008-Ohio-1504, ¶ 35; *see also State v. Wilson,* 10th Dist. Franklin No. 13AP-205, 2013-Ohio-4799, ¶ 4. However, "[w]e accord due deference to the trial court's findings of fact if supported by competent, credible evidence[.]" *Clemons* at ¶ 6; *accord Frasure.*

7

{¶15} The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects a criminal defendant from being convicted when the State either fails to preserve materially exculpatory evidence or fails to preserve, in bad faith, potentially useful evidence. *See, e.g., State v. Glenn*, 11th Dist. Lake No. 2015-L-029, 2015-Ohio-4832, ¶ 32-34 . Accordingly, "the suppression of *exculpatory* evidence that is material to guilt or punishment violates due process without respect to whether the state acted in bad faith." (Emphasis sic.) *State v. Jalowiec,* 2015-Ohio-5042, 52 N.E.3d 244, ¶ 48 (9th Dist.). When the state, however, fails to preserve evidence that is merely "potentially useful," a criminal defendant must demonstrate that the state acted in bad faith. *Arizona v. Youngblood,* 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988); *see also State v. Geeslin,* 116 Ohio St.3d 252, 2007-Ohio-5239, 878 N.E.2d 1, ¶ 9-10.

{¶16} "Evidence is 'materially exculpatory' if it (1) possesses 'an exculpatory value that was apparent before the evidence was destroyed' and (2) is 'of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'" *State v. McClain*, 2016-Ohio-838, 60 N.E.3d 783, ¶ 21, (2d Dist.), quoting *California v. Trombetta,* 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). Alternatively, "[p]otentially useful evidence indicates that the evidence may or may not have incriminated the defendant." *State v. Durnwald,* 163 Ohio App.3d 361, 2005-Ohio-4867, 837 N.E.2d 1234, ¶ 30 (6th Dist.). To properly consider the import of the destruction of potentially useful evidence, we underscore that "'[t]he term 'bad faith' generally implies something more than bad judgment or negligence.'" *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 81, citing *State v. Tate*, 5th Dist. Fairfield No. 07CA55, 2008-Ohio-3759, ¶ 13. "'"It imports a dishonest purpose, moral

8

obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another.'''" *Powell*, quoting *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 276, 452 N.E.2d 1315 (1983), quoting *Slater v. Motorists Mut. Ins. Co.*, 174 Ohio St 148, 187 N.E.2d 45 (1962), paragraph two of the syllabus.

{¶17} As noted above, the trial court found that the motorcycle could have provided potentially useful evidence to appellee's defense. By implication, the court determined the motorcycle and the evidence that could be gleaned from a defense expert's testing was not inherently exculpatory. Hence, pursuant to the above standards, appellee was required to establish the state acted in bad faith when it failed to place a hold on the motorcycle and preserve the evidence. The state maintains appellee failed to meet this burden and the trial court erred in dismissing the charges because its judgment was premised upon the conclusion that the state failed to act in good faith, a different, lower standard than proof that the state acted in bad faith.

{¶18} In support of its judgment, the trial court first concluded that the troopers on-scene failed to follow the formal policy relating to the recovery of evidence. The court determined that Ohio State Patrol policy 103.07, captioned "Evidence Control" governed the instant case. Subsection (F) specifically provides:

> **DISPOSAL OF EVIDENCE/RECOVERED PROPERTY –**
> The final disposition of all recovered and evidentiary property shall be determined within six months after all legal requirements have been satisfied. Evidence shall not be disposed of until after prosecution and proper disposition of the case by the court. The evidence may then be included in the next application for disposal submitted to the applicable court. All other property shall be held for a minimum of <u>six months</u> before it is included in the disposal application

9

submitted to the court. The disposition of all property shall be noted in the report of investigation.

{¶19} It is not entirely clear whether the above policy for disposal of evidence applies to this matter. This court has previously examined the language of this provision and stated:

A close reading of the Ohio Highway Patrol policy mandates that *evidence* be kept for a minimum of six months until "after prosecution and proper disposition of the case by the court." This language, while somewhat ambiguous, implies that there must be a criminal case initiated in the first place, which was not the case here. Furthermore, contrary to what this policy states, troopers testified that they followed the normal procedure of conducting a crash investigation and disposing of vehicles.

(Emphasis added.) *Frasure*, 2008-Ohio-1504, at ¶ 70.

{¶20} In this matter, the incident report provides that "Sgt. Mace notified Ravenna County Prosecutor Lewandowski about the crash on scene. Charge *will be compiled* once lab results are complete." (Emphasis added.) No charges or prosecution had been initiated at the time the motorcycle was released. A prosecution was not initiated against appellee until November 2019. In this respect, the release of the motorcycle at the scene (or three days later) might not trigger the "evidentiary" timeframe set forth in the policy.

{¶21} Still, the policy also speaks to "[a]ll other property" which "shall be held for a minimum of <u>six months </u>before a disposal application is submitted to the court." Even if the motorcycle was not immediately treated as "evidence," it was "other property." And the policy implies that other property must be held for a minimum of six months at which point an application for disposal would be submitted to the court. The motorcycle was "released," at the latest, three days after the incident, and there is no evidence a disposal application was filed with the court. This is problematic and ostensibly represents a direct

10

violation of Ohio State Highway Patrol policy. We cannot, however, conclude the violation, in this context, meets the heightened definition of "bad faith."

{¶22} With this in mind, at the spoliation hearing, Trooper Faith testified the on-scene highway patrol accident reconstructionist bears the responsibility for determining whether a hold will be placed on the vehicles involved. Because Trooper Faith was the primary investigating officer, she asked Trooper Cannon, the accident reconstructionist for the Ohio State Patrol on scene, if the vehicles required a hold to be placed upon them. Trooper Cannon responded in the negative.

{¶23} Trooper Faith further testified that if no hold is placed on evidence or property, the Ohio State Highway Patrol has no control over the same. When asked, on cross examination, why Subsection (F) was not followed in this case, Trooper Faith stated that the motorcycle was not "seized evidence." Yet, upon further questioning, Trooper Faith qualified her testimony, stating that even though it was not "seized evidence," the motorcycle was actually "evidence of the crash." Nevertheless, she remained firm that no hold was placed on the motorcycle.

{¶24} Trooper Cannon testified he did not order a hold on the motorcycle. He also echoed Trooper Faith's testimony that once the vehicles were towed from the scene without a hold, the state patrol has no control over them. Trooper Cannon also testified that the motorcycle was classified by the state patrol as "abandoned hazardous." The trooper conceded that designating property as abandoned hazardous requires a trooper to fill out a "HP-25-D" vehicle-inventory form. Trooper Cannon testified that he never observed the form as it related to the motorcycle, and could not comment on whether such a form was ever filed.

11

**{¶25}** On cross-examination, Trooper Cannon recognized that, at a previous hearing, the prosecutor in the case notified him that defense counsel had re-sent the July 2019 preservation letter to the prosecutor on March 3, 2020. Pursuant to this notification, Trooper Cannon visited Complete Towing on March 5, 2020 and found out the company still had the motorcycle in their lot. In particular, Trooper Cannon stated "[t]hey did mention having *the motorcycle* and I asked them if they - - why they still had it essentially. They asked if there's a hold. I said there's not, - - I asked them why *it* was there. They don't - - they don't have a hold on the vehicle." (Emphasis added.) The motorcycle was ultimately released to a private party on that date.

**{¶26}** Trooper Cannon attempted to walk back his previous testimony at the spoliation hearing, claiming Complete Towing was referring to motorcycles or vehicles without holds on them in general. In other words, he claimed the former testimony was not referring to the motorcycle at issue in this matter, but to any motorcycle that the towing company might have retained without a hold. The context of the exchange, however, strongly militates against his qualification. The trial court did not find the trooper's testimony attempting to qualify his previous statements credible and we must defer to its findings in that regard.

**{¶27}** It is unclear why, if Trooper Cannon was in fact aware that the motorcycle was in the lot on March 5, 2020, he did not then place a hold on the vehicle. This is especially true because appellee had already been indicted and, in light of the evidence, he was aware that defense counsel sought preservation of the vehicle. He further testified, when Subsection (F) was read to him by defense counsel, that he was familiar with the provision. Pursuant to Subsection (F), even if the motorcycle was not initially

12

"evidence" (in the technical sense of the policy), the trooper should have placed a hold on the motorcycle at that point and his failure to do so amounts to conscious wrongdoing in violation of the then applicable policy as well as a fundamental breach of common standards of justice and fair play.

{¶28} Moreover, "[p]rosecutors have 'a duty to learn of any favorable evidence known to *the others acting on the government's behalf in the case,* including the police.'" (Emphasis original.) *State v. Sanders*, 92 Ohio St.3d 245, 261, 750 N.E.2d 90 (2001), quoting *Kyles v. Whitley*, 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). When Trooper Cannon visited Complete Towing on March 5, 2020, the prosecutor should have communicated with him to "learn of any favorable evidence" he may have uncovered, viz., the motorcycle. The record fails to reflect this occurred. Indeed, not until the motion to dismiss for spoliation was filed did the prosecutor's investigator determine the motorcycle's location. This could be reasonably construed as a breach of a duty to learn of the potentially useful evidence which undermined appellee's due-process right to prepare a full defense.

{¶29} As noted above, bad faith envelops various levels of culpability that transcend bad judgment or negligence; it embraces "conscious wrongdoing" as well as the breach of a known duty through some ulterior motive. The evidence supports the conclusion that the trooper, with knowledge of the request for preservation as well as the motorcycle's location, did not place a hold on the vehicle and permitted its release to a third party. This reasonably rises to the level of conscious wrongdoing. And, to compound this, even though the prosecutor may not have exhibited a nefarious ulterior motive, his failure to learn what the trooper discovered can be reasonably viewed as a

13

breach of a known duty. With these points in mind, and recognizing the trial court improperly framed the standard in terms of a lack of good faith, we maintain there was sufficient evidence to support a legal finding of "bad faith."

{¶30} Notwithstanding the foregoing conclusion, the state argues that appellee was aware that the motorcycle was in the possession of a third party. The state contends the record fails to reflect what steps appellee took to determine where the motorcycle was located. In this respect, the state argues appellee was relying on the state to obtain evidence that he arguably could have obtained on his own. We do not agree.

{¶31} This court has previously observed that "'it is not the responsibility of the state to obtain evidence that the defendant can obtain on his own.'" *State v. Dinardo*, 11th Dist. Lake No. 2013-L-108, 2015-Ohio-1061, ¶ 25, quoting *State v. Franklin*, 2d Dist. Montgomery No. 19041, 2002-Ohio-2370, ¶ 52. In *Dinardo*, however, the defendant had equal access, pursuant to the state's open discovery policy, to a 911 recording. As such, this court pointed out that the state did not have to produce the evidence to the extent it was available to the defendant upon inspection of the state's files.

{¶32} This case is different. Here, appellee, via counsel, knew there was no hold on the motorcycle. And, he made a request that the prosecutor's office take steps to simply *preserve* the motorcycle. This is not a request for the prosecutor's office to obtain evidence to support appellee's defense.

{¶33} The record does not indicate appellee specifically knew where the motorcycle was being held. By requesting the state to preserve the evidence by placing a hold (particularly after appellee was indicted), appellee was not asking the state to be responsible for obtaining evidence for his defense. To the contrary, it was a prophylactic

14

maneuver designed to ensure evidence was not lost or destroyed before it could be used as a means to mounting an effective and reasonable defense.

{¶34} In light of the foregoing, we hold the trial court did not err in dismissing the charges based upon the actions or inactions of the state and/or those acting on the state's behalf. The state's assignment of error is therefore without merit.

{¶35} For the reasons discussed in this opinion, the judgment of the Portage County Municipal Court, Ravenna Division, is affirmed.

JOHN J. EKLUND, P.J.,

MARY JANE TRAPP, J.,

concur.

15

Case No. 2022-P-0053