[Cite as *State v. Urbanski*, 2023-Ohio-3966.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                     Court of Appeals No.  L-22-1304

　　　　Appellee                              Trial Court No.  CR0202102409

v.

Brian Urbanski                              **DECISION AND JUDGMENT**

　　　　Appellant                            Decided:  October 27, 2023

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Brenda J. Majdalani, Assistant Prosecuting Attorney, for appellee.

Laurel A. Kendall, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from the judgment by the Lucas County Court of Common

Pleas, which sentenced appellant, Brian Wesley Urbanski, to an indefinite prison term of

eight to twelve years for aggravated vehicular homicide after the trial court denied

appellant's motions to dismiss and to suppress, accepted his no-contest plea, and convicted

him for the offense. For the reasons set forth below, this court affirms the judgment of the

trial court.

## I. Background

{¶ 2} On September 7, 2021, a Lucas County Grand Jury indicted appellant with two felonies, count Nos. one and two, and two misdemeanor offenses, count Nos. three and four: one count of aggravated vehicular homicide, in violation of R.C. 2903.06(A)(1)(a) and 2903.06(B), a first-degree felony; one count of aggravated vehicular homicide, in violation of R.C. 2903.06(A)(2)(a) and 2903.06(B), a second-degree felony; one count of operating a vehicle while under the influence of alcohol, a drug of abuse, or a combination of them, in violation of R.C. 4511.19(A)(1)(a) and 4511.19(G)(1)(a), a first-degree misdemeanor; and one count of operating a vehicle while under the influence of a listed controlled substance or a listed metabolite of a controlled substance, in violation of R.C. 4511.19(A)(1)(j)(iii), 4511.19(G)(1) and 4511.19(G)(1)(d), a first-degree misdemeanor.

{¶ 3} The indictments arose from an incident at 11:30 a.m. on Saturday, March 6, 2021, in Springfield Township, Lucas County, Ohio. The morning was clear and sunny. Appellant, while driving a borrowed 2009 Honda Civic[1] without a valid license and impaired by drugs-of-abuse, including cocaine, struck a bicyclist in the roadway, dragged the victim onto the adjacent grass, flung the victim further into the grass after the vehicle stopped, and instantly killed the victim. A witness called 9-1-1.

---

[1] The car's title owner, John Martin, was appellant's deceased uncle. Five days earlier, appellant's adopted grandfather, also called his grandfather, held Mr. Martin's power of attorney and took possession of the vehicle. Appellant's grandfather appeared at the scene and announced to Trooper Skinner he gave appellant permission to drive the vehicle as the current vehicle owner.

2.

{¶ 4} The following timeline of events are relevant to the assignments of error in this appeal. The Toledo Post of the Ohio State Highway Patrol responded to the scene and found the bicyclist's body on the grass near where the vehicle came to a stop with the bicycle under the vehicle's right front corner. Emergency medical personnel attempted to revive the victim with no success. Three state highway troopers, Troopers Skinner, Gonzales, and Harkey, along with a supervisor, responded and collectively secured the scene; interviewed witnesses; took photos; made a field sketch of the scene with the final resting place of the body, vehicle, bicycle and other objects, and with reference points for any measurements; arranged for removal and preservation of the victim's bicycle; inventoried and seized syringes and drug paraphernalia from the vehicle, where one of the seized syringes had a bent, used needle with fresh blood on it; arranged for towing of the vehicle to a tow lot; collected data for reconstruction analysis; and made the roadway safe for traffic. The tow truck operator, who is also the tow lot owner, testified that in steering the vehicle to straighten it to be loaded onto the tow truck, and when, after unloading it at the tow lot, in steering it to the parking spot, he had no problem with the vehicle's steering and suspension.

{¶ 5} Trooper Skinner administered a field sobriety test to appellant because he appeared impaired. Trooper Skinner observed appellant was restless and agitated, and after placing him in the back of the patrol vehicle, observed him fall asleep, which he twice repeated at the station. Trooper Skinner testified that appellant "knew he was impaired. He did not do this intentionally, but it was the drugs in his body that made him do this act."

3.

{¶ 6} Trooper Skinner left the scene with appellant one hour and forty minutes later for the station and arrived within 12 minutes. At the station, Trooper Skinner prepared appellant's written statement, and appellant signed it. Appellant alleged that while driving, the vehicle's steering suddenly veered left-of-center, which he could not correct or adequately brake, causing the direct hit of the victim. Troopers Skinner, Gonzales, and Harkey testified there were no skid or tire marks to corroborate appellant's statement. Trooper Gonzales testified, "The reason there [are no skid marks on the field sketch is] because the vehicle was free rolling on all the tires. There was no yaw of the tires." Trooper Skinner testified the vehicle came to rest on the grass from the actual impact with the victim, not from braking. Trooper Harkey testified, "There really wasn't any evidence on the roadway that showed any type of evasive action, that showed any type of braking, nothing of that sense."

{¶ 7} At the station, Trooper Skinner secured and packaged the seized items from the vehicle to send to the state highway crime lab. Without the benefit of a form document or support staff on a Saturday, Trooper Skinner typed "from scratch" the search warrant to obtain appellant's blood sample, which took an hour. Trooper Skinner then researched the personal phone numbers of judges to sign the search warrant. On the fifth attempt, Trooper Skinner found an available judge from the Sylvania Municipal Court, who came down to the station to review the search warrant before signing it at 4:45 p.m. Then, by 5:02 p.m., Trooper Skinner departed with appellant for a nearby hospital, arriving within 20 minutes. Trooper Skinner provided the phlebotomist with the state highway patrol's standard blood-

4.

draw kit to collect the evidence. The actual blood draws for two vials occurred twenty-seven and twenty-eight minutes later, respectively, or by 5:48 p.m. After the phlebotomist secured the vials of blood, Trooper Skinner took possession of them and immediately placed identification labels and tamper-detecting seals on them, packaged them, and then placed by 6:30 p.m. the package in a designated mail drop to the state highway crime lab, which received it five days later.

{¶ 8} Within two weeks of the March 6, 2021 incident, appellant and/or the vehicle owner contacted the tow lot owner to obtain the vehicle, and repeatedly did so thereafter. On April 22, Trooper Skinner concurrently notified the tow lot owner and the vehicle owner that the hold on the vehicle was released. Rather than pick up the vehicle, and without visiting the vehicle, on May 6, the vehicle owner signed the vehicle's title over to the tow lot owner in lieu of the accrued tow lot storage fees, and the tow lot owner titled the vehicle in its name on May 13. The vehicle remained in the tow lot. Meanwhile, on September 7, a grand jury indicted appellant with the four offenses. After some cosmetic repairs from the impact with the victim, the tow lot owner sold the vehicle to a new owner on September 29. The new owner drove the vehicle out of the tow lot without incident. Since purchasing the vehicle, the new owner testified that the vehicle functions normally and only needed routine replacement of the brake pads.

{¶ 9} Appellant entered not-guilty pleas at his arraignment, and the matter proceeded to trial. On May 16, 2022, appellant filed a motion to dismiss each count of aggravated vehicular homicide, count Nos. one and two, arguing that appellee, state of

5.

Ohio, violated his due process rights by not preserving the vehicle as materially exculpatory evidence of his mechanical-defect defense. Appellee opposed the motion. At the two-day hearing held on July 18 and on July 27, the trial court admitted four documents into evidence and received testimony from six witnesses: Troopers Skinner, Harkey, and Gonzales, the tow lot owner, the new vehicle owner, and appellant's grandfather. The trial court announced its decision to deny appellant's motion to dismiss on September 21.[2] Appellant rejected all plea offers, and the trial date was set for October 24, and then reset for November 28.

{¶ 10} On the afternoon of November 22, 2022, which was the last business day before the Thanksgiving break, appellant filed a motion to suppress and/or motion in limine for the blood samples appellee obtained from him on March 6, 2021. Appellant argued the blood samples were not properly obtained, stored, or delivered for crime-lab testing in violation of R.C. 4511.19(D)(1)(b) and Ohio Adm.Code Chapter 3701-53. Appellee opposed the motion, and the hearing was held on November 28, in lieu of the trial. The trial court received testimony from Trooper Skinner, who was involved with the collection and handling of the blood samples up through placing them in transit to the state highway crime lab, and from the state highway crime lab toxicology analyst who received the blood samples, conducted tests on them, and prepared a report of the findings. After hearing extensive arguments by the parties, the trial court denied the motion that day.

---

[2] The trial court's decision and judgment entry was journalized on November 22, 2022.

6.

{¶ 11} Plea negotiations ensued that same day, and appellant pled no contest to amended count No. one, a lesser-included offense of aggravated vehicular homicide in violation of R.C. 2903.06(A)(1)(a) and a second-degree felony under R.C. 2903.06(B). Appellee agreed to dismiss the remaining three counts.

{¶ 12} The trial court accepted appellant's no-contest plea to amended count No. one, found appellant guilty of the offense, and sentenced appellant to serve a mandatory, minimum term of eight years with a maximum, indefinite term of 12 years. The trial court summarized at sentencing:

Mr. Urbanski, I look at your record, and you started as a little boy and it has been non-stop. * * * Nothing * * * has derailed your * * * disregard for rules, for humanity. You just do whatever you want. And whether or not you had a hard life, whether or not drugs have been a problem for you, you also made yourself a weapon. And every time you got into that vehicle and did whatever you wanted, you were no different to me than a bullet going into a crowd. Because at some point you were going to connect and victimize somebody.

* * *

Every time I listen to your statements or read in reports or however this is brought before the Court with regard to your trying to rely on mechanical malfunctions in your car, and you keep relying on the fact that you heard some clunking noises and metal under your vehicle, and I do think

that's true. But I think it was a human being and a bicycle. And I think that's when your body first registered something was happening. Don't kid yourself, Mr. Urbanski, that you're not at fault. Don't kid yourself that your car was at fault. * * * You are a drug addict. You used. You once again got behind the wheel. You put other people in danger. And on that particular day, [it was the victim simply because] he chose to go on a bike ride.

{¶ 13} Appellant timely appealed the trial court judgment setting forth four assignments of error:

1. Appellant's constitutional rights to due process and a fair trial were violated when the State failed to preserve the automobile involved in this matter as exculpatory evidence.

2. The State's failure to preserve the vehicle as evidence rises to the level of bad faith, even if the evidence is only potentially useful, and therefore violates Appellant's constitutional rights to due process and a fair trial

3. The release of the vehicle was arguably a violation of OSHP Evidence Control procedure 103.07(F). and therefore, a violation of appellant's rights to due process and a fair trial.

4. The trial court abused its discretion when it denied Appellant's Motion to Suppress and/or Motion in Limine.

**II. Due Process**

8.

{¶ 14} Appellant's first, second, and third assignments of error each allege violations of his due process right to a fair trial with respect to one piece of allegedly exculpatory evidence: the vehicle he drove that struck and killed the bicyclist on March 6, 2021. Appellant argues the vehicle was materially exculpatory evidence of a mechanical defect that caused the accident, and appellee failed to preserve the vehicle "for further investigation by defense experts during the litigation process" when it released it to the owner, his grandfather. Appellant admits the vehicle owner knew of the mechanical defect, when his grandfather testified that he experienced a similar, sudden, loss of control three days before the incident,[3] but refused to authorize any repairs.

{¶ 15} Appellee responds that appellant's due process rights were not violated for three reasons. First, appellant failed to show that the vehicle was materially exculpatory evidence or that appellee acted in bad faith, if the vehicle was potentially exculpatory evidence, when it released the vehicle to his grandfather. Second, appellant invited any alleged error by the trial court because "[b]ut for the family's numerous requests for release [of the vehicle to the highway patrol and to the tow lot owner], and then signing over the title, the Honda would have been available for inspection by the defense expert." Third, the alleged mechanical failure at the moment of the accident is irrelevant in the face of the

---

[3] Appellant's grandfather testified that on March 3, 2021, a similar, sudden catastrophic steering problem occurred, where the vehicle stopped running, kept rolling over a median at a shopping mall, and then could not be restarted. He had it towed by AAA to their service center. "They were going to try to fix the car, and I said no." Instead, he brought it to Belle Tire and had them install two new tires.

strict liability offense of aggravated vehicular homicide. As explained by appellee, "The mechanical condition of [the] Honda could not and would not have shown that Appellant did not commit the strict liability offense of Aggravated Vehicular Homicide, while under the influence of drugs."

{¶ 16} "[W]hen reviewing a trial court's ruling on a motion to dismiss arising from an alleged due process violation based on destroyed or missing evidence, we defer to the factual findings of the trial court while applying a de novo review of the trial court's application of the facts to the law." *State v. Walker*, 2022-Ohio-1684, 192 N.E.3d 1159, ¶ 33 (10th Dist.). "The defendant bears the burden to show that the evidence was materially exculpatory." *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 74. As discussed below, we find that appellant's motion to dismiss fails for a number of reasons.

{¶ 17} First, we find that appellant failed to meet his burden that the lost or destroyed vehicle was either materially exculpatory evidence, i.e., its exculpatory value is apparent on its face, or that appellee acted in bad faith if the vehicle was at least potentially exculpatory, i.e., a dishonest purpose, moral obliquity, conscious wrongdoing, ulterior motive or ill will to breach a known duty, or actual intent to mislead or deceive. *Id.* at ¶ 73-81.

{¶ 18} Second, it is undisputed that at no point did appellant request the state preserve the vehicle as materially exculpatory evidence until he filed his motion to dismiss, which was one year after appellant's grandfather voluntarily relinquished title to the

10.

vehicle. *See State v. Fox*, 2012-Ohio-4805, 985 N.E.2d 532, ¶ 26 (4th Dist.); *State v. Williams*, 11th Dist. Portage No. 2022-P-0053, 2023-Ohio-3526, ¶ 32-33 (distinguishing a timely request to the prosecution to preserve a motorcycle from obtaining evidence to support the defense). The trial court found that appellant's self-serving statements of sudden, catastrophic mechanical failure immediately prior to victim impact were not supported by: (1) witness testimonies of normal functioning of the vehicle since the accident; (2) the witnesses who observed the final resting orientation of the vehicle, bicycle, and victim at the crash scene; (3) the absence of tire marks to indicate braking or efforts to evade the collision; (4) the drug paraphernalia seized from the vehicle and appellant's drug-impaired conduct at the crime scene and at the station; and (5) appellant's own evidence indicating merely two new tires were purchased and installed two days prior to the incident, despite an allegedly similar mechanical failure three days prior to the incident. The speculation that the vehicle could have exculpated appellant if the vehicle had been tested for the alleged mechanical defects is not enough to rise to a due process violation. *See City of Toledo v. Sanders*, 6th Dist. Lucas No. L-21-1260, 2023-Ohio-2092, ¶ 39.

{¶ 19} Third, appellant cites to no legal authority for his conclusion that a violation of section No. 103.07(F) of the Ohio Highway Patrol's policy on disposal of recovered and evidentiary property also violates his due process rights. Section No. 103.07(F)(2) required reasonable efforts by the agency to locate the "persons entitled to possession of the property, to notify them of when and where it may be claimed, and to return the property

11.

to them at the earliest possible time (see R.C 2981.11). The evidence or property may then be released or discarded depending on the owner's response."

{¶ 20} The trial court found that is what happened. Trooper Skinner testified that the recovered vehicle, a piece of tangible property involved in an aggravated vehicular homicide, was held at the tow lot only so long as necessary. When the investigation of it was completed, the vehicle was released to the owner. Trooper Gonzales did not mark the vehicle as evidence on the crash report because, "it was out of a crash, and we had nothing to indicate in any way, shape, or form that it looked like we need to take this as evidence at the scene. We even had supervisors out there. * * * We had no indication for us to take it as evidence at that time." Trooper Harkey testified, "Nothing indicated there was any type of defect with this vehicle." He gathered crash scene reconstruction data with specialized equipment and forwarded the data file to District 1's two, full-time accident reconstructionists. The air bags did not deploy. He "was really surprised how there was (sic.) no marks on the roadway" to indicate brakes locking up or hard steering to avoid the collision. Once the reconstructionists completed their analysis, the vehicle was ready to be released, in compliance with the state highway policy.

{¶ 21} Fourth, the mechanical functionality of the vehicle is irrelevant to the essential elements of the aggravated vehicular homicide offense to which appellant pled no contest. A no-contest plea is not an admission of guilt, but an admission of the truth of the facts alleged in the indictment. Crim.R. 11(B)(2). Nevertheless, "the plea of no contest does not preclude a defendant from asserting upon appeal that the trial court prejudicially

12.

erred in ruling on a pretrial motion, including a pretrial motion to suppress evidence." Crim.R. 12(I). However, appellant does not argue prejudice, and prejudice is not automatic even if the trial court had improperly denied the motion to dismiss. *See State v. LaRosa*, 165 Ohio St.3d 346, 2021-Ohio-4060, 179 N.E.3d 89, ¶ 50.

{¶ 22} Here, appellant pled no contest to violating R.C. 2903.06(A)(1)(a), which states for aggravated vehicular homicide, "No person, while operating or participating in the operation of a motor vehicle, * * * shall cause the death of another * * * in any of the following ways: (1)(a) As the proximate result of committing a violation of [R.C. 4511.19(A).]" In turn, R.C. 4511.19(A)(1)(a), states, "No person shall operate any vehicle * * * within this state, if, at the time of the operation, any of the following apply: (a) The person is under the influence of alcohol, a drug of abuse, or a combination of them." R.C. 2903.06(A)(1)(a) is a strict-liability offense. *State v. Hohenberger*, 189 Ohio App.3d 346, 2010-Ohio-4053, 938 N.E.2d 419, ¶ 44-46 (6th Dist.) Thus, the alleged mechanical failure of the vehicle is not a defense to the essential elements of aggravated vehicular homicide.

{¶ 23} Upon de novo review of the trial court's application of the facts to the law, we find no due process violation and no error with the trial court's denial of appellant's motion to dismiss count Nos. one and two. Appellant's first, second, and third assignments of error are found not well-taken.

### III. Motion to Suppress

{¶ 24} In support of his fourth assignment of error, appellant argues the trial court erred in denying his motion to suppress and/or motion in limine and in admitting the

13.

laboratory test results from his blood samples as evidence of his drug impairment at the time of the incident. Appellant argues appellee failed to substantially comply with applicable law and regulations, citing *State v. Mayl*, 106 Ohio St.3d 207, 2005-Ohio-4629, 833 N.E.2d 1216, ¶ 3 ("We conclude that in a criminal prosecution for aggravated vehicular homicide that depends upon proof of an R.C. 4511.19(A) violation, laboratory test results are admissible only if the state shows substantial compliance with R.C. 4511.19(D)(1) and Ohio Adm.Code Chapter 3701-53, even if the test was conducted in an accredited hospital laboratory."). Appellant specifically argues appellee did not substantially comply with R.C. 4511.19(D)(1)(b), which mandates a blood draw occur within three hours of the alleged incident, not six hours as actually occurred.

{¶ 25} Appellee responds that the evidence was admissible, citing *State v. Hassler*, 115 Ohio St.3d 322, 2007-Ohio-4947, 875 N.E.2d 46, syllabus ("A blood sample taken outside the time frame set out in R.C. 4511.19(D) is admissible to prove that a person is under the influence of [a drug of abuse] as proscribed by R.C. 4511.19(A)(1)(a) in the prosecution for a violation of R.C. 2903.06, provided that the administrative requirements of R.C. 4511.19(D) are substantially complied with and expert testimony is offered."). First, there was detailed testimony by Trooper Skinner and by the crime-lab toxicology analyst of substantial compliance with the forensic testing requirements under R.C. 4511.19(D)(1)(b) and Ohio Adm.Code 3701-53-06 with respect to the collection, handling, and testing of appellant's blood samples. Second, the blood sample test results by the

14.

crime-lab toxicology analyst[4] showed the presence of cocaine, amphetamine, and methadone, and any blood collection delay from three- to six-hours would be to appellant's benefit: "the only thing that I know that could possibly happen is degradation of the sample, meaning the results might be lower than what they would have been."

{¶ 26} During the hearing, the trial court determined that appellant failed to "establish any prejudice" with respect to failures to comply with the statutory and administrative guidance for the collection, handling, and testing of appellant's blood samples. The trial court's subsequent journalized entry states, "The court finds the State of Ohio has substantially complied with the requirements of the Ohio Administrative Code and met its burden to maintain the blood evidence for the impairment purposes." The trial court then denied appellant's motion to suppress and/or motion in limine.

{¶ 27} We review the trial court's denial of appellant's motion to suppress as a mixed question of fact and law. *LaRosa*, 165 Ohio St.3d 346, 2021-Ohio-4060, 179 N.E.3d 89, at ¶ 17, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. We accept the trial court's factual findings if they are supported by competent, credible evidence, but review de novo the trial court's legal conclusions. *Id.*

{¶ 28} We reviewed the record and find there is competent, credible evidence to support the trial court's factual findings that appellee substantially complied with the

---

[4] Appellee informed the trial court that, rather than have the trial court deem the crime lab toxicology analyst an expert both at the suppression hearing and at trial, the formal expert-qualification process would occur at trial.

administrative requirements under R.C. 4511.19(D)(1)(b) and Ohio Adm.Code 3701-53-06. The record contains no indication of intentional delays by Trooper Skinner to obtain appellant's blood samples and then send them to the state highway crime lab for analysis, where any delays only benefitted appellant. The presence of drugs of abuse were reported by the crime-lab toxicology analyst, who tested appellant's blood samples.

{¶ 29} Upon de novo review, we further find that appellant was not prejudiced by the six-hour blood draw delay. Nor by the five days of unrefrigerated transit of the blood samples to the state highway crime lab, which is specifically authorized by Ohio Adm.Code 3701-53-06(G). The toxicology test results of drug concentrations from delayed testing of his blood samples would have benefitted appellant, not prejudiced appellant. Having found the blood test results presumptively admissible, appellant failed to meet his burden of showing prejudice from such less-than-strict compliance for the initial blood draw, and the trial court did not err in denying his motion to suppress and/or motion in limine. *State v. Owens*, 6th Dist. Lucas No. L-15-1215, 2016-Ohio-3092, ¶ 28.

{¶ 30} Appellant's fourth assignment of error is not well-taken.

### IV. Conclusion

{¶ 31} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

16.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Thomas J. Osowik, J.

_____
                    JUDGE

Christine E. Mayle, J.

_____
Myron C. Duhart, P.J.                         JUDGE
CONCUR.

_____
                    JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.