[Cite as *State v. Whitfield*, 2023-Ohio-4579.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                       Court of Appeals No. L-22-1259

    Appellee                                    Trial Court No. CR0202102966

v.

Mitchell Whitfield                              **DECISION AND JUDGMENT**

    Appellant                                   Decided: December 15, 2023

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Kaitlyn Tauber, Assistant Prosecuting Attorney, for appellee.

Lawrence A. Gold, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common

Pleas, which sentenced appellant, Mitchell Whitfield, to four years of community control

after a jury convicted him of cocaine possession and tampering with evidence. For the

reasons set forth below, this court affirms the judgment of the trial court.

**{¶ 2}** Appellant sets forth three assignments of error in this appeal:

1. The trial court abused its discretion and erred to the prejudice of appellant by denying his motion to suppress evidence.

2. The trial court erred in denying appellant's Crim.R. 29 motion.

3. The jury's verdict was against the manifest weight of the evidence presented at trial.

## I. Background

**{¶ 3}** This appeal originated from two felony indictments issued on February 7, 2021, by a Lucas County Grand Jury against appellant for possession of cocaine, a violation of R.C. 2925.11(A) and (C)(4)(a) and a fifth-degree felony under R.C. 2925.11(C)(4)(a), and for tampering with evidence, a violation of R.C. 2921.12(A)(1) and a third-degree felony under R.C. 2921.12(B). Appellee, the state of Ohio, alleged that at around 4:00 pm on October 16, 2021, in Toledo, Lucas County, Ohio, after Toledo police smelled the strong odor of marijuana originating from appellant's vehicle, which appellant was driving alone, and before Toledo police could stop the vehicle, appellant tossed from the window a plastic bag containing cocaine. Appellant pled not guilty, and discovery ensued in anticipation of a jury trial.

**{¶ 4}** On May 20, 2022, appellant filed a motion to suppress all information and evidence arising from the October 16, 2021 traffic stop because appellee lacked an arrest warrant for appellant and was without "probable cause or a reasonable suspicion of

2.

criminal activity or any other constitutionally permissive reason for stopping the vehicle." Appellee opposed the motion to suppress, and the hearing on the motion was held on June 24. The trial court heard testimony from one witness and admitted one exhibit into evidence. On June 27, the trial court denied appellant's motion to suppress.

{¶ 5} The jury trial commenced on September 19, 2022. The jury heard testimony from three witnesses, and the trial court admitted five exhibits into evidence. Following a two-day trial and deliberations, the jury found appellant guilty of both offenses. Sentencing occurred on October 5, 2022, during which the trial court reviewed the 36-year-old appellant's lengthy criminal history that included one felony and 22 misdemeanors as an adult. Appellant offered mitigating factors for the court's consideration. The trial court sentenced appellant to serve four years of community control with conditions. Appellant timely appealed.

## II. Motion to Suppress

{¶ 6} In support of his first assignment of error, appellant argues the trial court abused its discretion by denying his motion to suppress and in admitting evidence arising from allegedly illegal traffic stop by officers of the Toledo police gang force. Appellant argues appellee's traffic stop was pretextual because the Toledo police officers "were seeking to be 'proactive' with regard to 'suppression stops.'" Appellant further argues it was impossible for the police officers "to smell burnt marijuana with their windows rolled up[.]" Appellant argues that the smell of burnt hemp, which is legal, is comparable

3.

to burnt marijuana. Consequently, appellant concludes the traffic stop was made without reasonable suspicion or probable cause, which resulted in an ensuing search that violated his constitutional rights.

{¶ 7} Appellee responds the trial court did not abuse its discretion because of competent, credible testimony by one of the three Toledo police officers at the scene, who is familiar with the odor of marijuana based on his seven-and-one-half-years of training, education, and experience relating to illegal narcotics. The officer testified at the hearing that the odor of marijuana coming from appellant's car, a blue Pontiac G6, was "significant." Consequently, the officer had probable cause to believe that appellant possessed marijuana in the car and was driving under the influence of that drug, which are crimes in Ohio. Citing *State v. Vega*, 154 Ohio St.3d 569, 2018-Ohio-4002, 116 N.E.3d 1262, ¶ 15, which, in turn, quotes *State v. Moore*, 90 Ohio St.3d 47, 48, 734 N.E.2d 804 (2000), appellee argues the Ohio Supreme Court has made clear that "the smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to search a motor vehicle, pursuant to the automobile exception to the warrant requirement." The court further affirmed, "There need be no other tangible evidence to justify a warrantless search of a vehicle." *Moore* at 48. We agree. *State v. Brown*, 6th Dist. Sandusky No. S-20-015, 2021-Ohio-753, ¶ 36.

{¶ 8} Following the suppression hearing, the trial court determined that, after the traffic stop, appellant admitted to the police, "You know I smoke weed." The trial court

4.

continued, "He makes essentially the same admission more than once in the body-worn camera footage submitted to the court, and does not attempt to clarify that he means to say 'hemp' instead of 'marijuana.'" In any event, appellant did not present any evidence with which the court could compare the smells of burnt marijuana and burnt hemp. The trial court found: the odor of marijuana from the car was strong when the police approached it; appellant repeatedly called "marijuana" the burnt blunt found in appellant's blue Pontiac G6; and the police retrieved the "white chalky substance" observed thrown from appellant's blue Pontiac G6, which was "found to be contraband upon testing." The trial court then denied appellant's motion to suppress.

{¶ 9} We review the trial court's denial of appellant's motion to suppress as a mixed question of fact and law. *State v. LaRosa*, 165 Ohio St.3d 346, 2021-Ohio-4060, 179 N.E.3d 89, ¶ 17, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. We accept the trial court's factual findings if they are supported by competent, credible evidence, but review de novo the trial court's legal conclusions. *Id.*

{¶ 10} We find the trial court's factual findings are supported by competent, credible evidence. Detective Mugler testified regarding his formal training, education. and daily job experience recognizing the odor and appearance of raw and burnt marijuana. He testified that "the odor of that burning marijuana is generally a lot stronger than just the raw marijuana." During his noon-to-eight-o'clock shift on October 16, 2021, at around four o'clock, he drove an unmarked police SUV with two additional

5.

gang-unit officers. "We're primarily looking for gang members, but we're also primarily looking for – to get guns and drugs off the street." Under cross-examination, detective Mugler was questioned about the gang unit's proactive approach to traffic stops.

Q: It's not reactive, you're not waiting until you see something? It's more proactive, you're out there hunting for different vehicles to pull over?

A: We try to be proactive, but we are also very reactive in what we do.

Q: But that day you were being proactive, correct?

A: I was actually being reactive to what I smelled and what I had in front of me. But, yes, we were out to conduct traffic stops.

{¶ 11} At the time of the incident, the three gang-unit officers were "conducting crime suppression in the area of Warren and Delaware when we noticed a [blue Pontiac G6] stopped in the middle of the road on Warren. There were some kids around. We could smell the odor of marijuana coming from the vehicle." The police SUV was stopped directly behind the single-occupant blue Pontiac G6, which had its windows down, when the marijuana odor was strongest, even though the police vehicle's windows were up. "So we actually waited. The vehicle continued northbound and as the vehicle continued northbound and made its westbound turn onto Delaware, I could still smell the vehicle or the marijuana coming from the vehicle, so we were 100 percent sure that the marijuana was coming from that vehicle at that point when there was nobody else around

6.

that vehicle." Based on that certainty, "it leads us to believe that there is a crime of marijuana possession or possibly driving under the influence of marijuana." Detective Mugler then initiated the vehicle's lights and activated his body-worn camera for the traffic stop.

{¶ 12} The driver of the blue Pontiac G6 did not pull over. Then as the blue Pontiac G6 "made a southbound turn onto Putnam, the driver and only occupant in the vehicle reached across to the passenger side and threw what appeared to be a white plastic bag or bag containing a white substance out of the passenger side of the vehicle into the grassy area on the side of – on the west side of Putnam Street." The driver of the blue Pontiac G6 still did not pull over, but eventually did so a while later. Detective Mugler continued:

> Once that vehicle came to a rest, I approached the driver's side of the vehicle, made contact with that driver, asked if there was marijuana coming from the vehicle, because again, when I'm standing that close to the vehicle, it's very apparent that it's coming from inside that vehicle. The – asked him if there was weed in the car and then didn't really get a response. Said is there marijuana in the car, he said, you know I smoke, you know I smoke, a couple times. And then I proceeded to get him out of the vehicle. That's when we identified the driver as Mitchell Whitfield and I placed him in handcuffs at that time for what we had going on.

7.

We weren't 100 percent sure what he had thrown out the window so we just detained him and with that odor of marijuana, we brought him to the back of the car. I actually had him sit on the curb and I checked him just to make sure he didn't have anything else on him.

{¶ 13} Detective Mugler suspected the plastic bag tossed out of the blue Pontiac G6 c contained cocaine. "Generally * * * when we're conducting a traffic stop and occupants are throwing items out of vehicles, that's – in my experience they're trying to tamper with evidence or get rid of evidence, guns and drugs." While detective Mugler remained with appellant, detectives Sulick and Schotter searched for the plastic bag in the area where it had been tossed and immediately found it. Through later lab testing, the plastic bag's contents were confirmed to be 3.23 grams of crack cocaine.

{¶ 14} Detectives Sulick and Schotter brought the retrieved plastic bag to where detective Mugler was with appellant. "Due to that odor of that marijuana coming from the vehicle, that gave us probable cause to believe that there's probably more drugs inside the vehicle." Detective Mugler read appellant his rights, appellant, again, admitted he had a "blunt" in the car's ashtray, and searched the rest of the blue Pontiac G6. At no time did appellant indicate the "blunt" was anything other than weed, a well-known synonym for marijuana, according to detective Mugler. The half-smoked "blunt" of marijuana was found in the car's ashtray, but no other drugs. "And during the course of

8.

that stop, Mr. Whitfield did not give me any indication of him actually being under the influence or being impaired as to being able to drive that vehicle."

{¶ 15} Having found there is competent, credible evidence to support the trial court's factual findings, upon de novo review, we further find no error with the trial court's decision to deny appellant's motion to suppress. The smell of marijuana alone by detective Mugler, a person qualified to recognize the odor, provided sufficient probable cause to search the blue Pontiac G6, and no other tangible evidence was required to justify the warrantless search of appellant's car.

{¶ 16} Appellant's first assignment of error is not well-taken.

### III. Sufficiency of Evidence

{¶ 17} Appellant's second assignment of error argues appellee failed to meet its burden to produce sufficient evidence to convict him of cocaine possession and evidence tampering for three reasons: (1) there was no evidence of a traffic violation committed by appellant; (2) there was no forensic evidence at trial to link him to the 3.23 grams of crack cocaine retrieved at the scene; and (3) there was no video evidence showing him possessing crack cocaine or tampering with evidence. Appellant argues that he was prejudiced by the trial court's denial of his two Crim.R. 29(A) motions for acquittal, and his conviction should be reversed.

{¶ 18} Appellee responds that the evidence is more than sufficient to permit the jury to find that the elements of cocaine possession and evidence tampering were proven

9.

beyond a reasonable doubt. Citing *State v. Bridgeman*, 55 Ohio St.2d 261, 264, 381 N.E.2d 184 (1978), which construed Crim.R. 29(A), appellee argues that even if reasonable minds reach different conclusions whether each element of the crime was proven beyond a reasonable doubt, "they clearly *might* find guilt." (Emphasis sic.) We agree.

{¶ 19} Appellant made two motions for acquittal pursuant to Crim.R. 29(A): after appellee rested its case and after appellant rested his case. The trial court denied both motions. Crim.R. 29(A) states, in part, "The court on motion of a defendant * * *, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment * * *, if the evidence is insufficient to sustain a conviction of such offense or offenses." Appellant's motions for acquittal under Crim.R. 29(A) are governed by the same standard as a challenge to the sufficiency of evidence supporting a conviction at trial. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.

> The test for sufficiency of the evidence is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." "'Proof beyond a reasonable doubt' is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of the person's own affairs." A sufficiency-of-the-

evidence challenge asks whether the evidence adduced at trial "is legally sufficient to support the jury verdict as a matter of law." (Citations omitted.) *State v. Worley*, 164 Ohio St.3d 589, 2021-Ohio-2207, 174 N.E.3d 754, ¶ 57.

{¶ 20} We must determine if any rational trier of fact viewing the evidence at trial, when viewed in a light most favorable to appellee, could have found the essential elements of possession of cocaine and of tampering with evidence proven beyond a reasonable doubt. We do from the admitted evidence.

{¶ 21} With respect to the elements of a possession-of-cocaine offense, R.C. 2925.11(A) "provides, 'No person shall knowingly obtain, possess, or use a controlled substance,' and R.C. 2925.11(C) establishes separate offenses based on the identity of the controlled substance involved." *State v. Foreman*, 166 Ohio St.3d 204, 2021-Ohio-3409, 184 N.E.3d 70, ¶ 14. In turn, R.C. 2925.11(C)(4), "'prescribes the offense of 'possession of cocaine.' And R.C. 2925.01(K) defines the terms 'possess' and 'possession' as "having control over a thing or substance.'" *Id.*

{¶ 22} With respect to the elements of a tampering-with-evidence offense, R.C. 2921.12(A)(1) provides, "No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any record, document, of thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]" "A conviction for

11.

tampering with evidence pursuant to R.C. 2921.12(A)(1) requires proof that the defendant intended to impair the value or availability of evidence that related to an existing or likely official investigation or proceeding." *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, 11 N.E.3d 1175, syllabus.

{¶ 23} The admitted evidence at trial included testimony from three witnesses: detectives Mugler and Schotter and the Toledo police crime lab drug analyst. In addition, the trial court admitted the following evidence: the body-worn camera videos of detectives Schotter and Mugler, the crack cocaine found in the plastic bag retrieved by detective Schotter, the marijuana blunt retrieved from appellant's car by detective Mugler, and the drug-analyst expert's curriculum vitae and report concluding that the "off-white looking chunky material" found in the plastic bag is 3.23 grams of crack cocaine.

{¶ 24} Detectives Schotter and Mugler each testified that at the late afternoon of October 16, 2021, while in an unmarked police SUV stopped behind a blue Pontiac G6, they smelled the strong odor of marijuana coming from it. Appellant was the driver and sole occupant of the blue Pontiac G6. Detective Mugler drove the unmarked police SUV, with detective Schotter in the front passenger seat, and detective Sulick in the back. The detectives are all part of the Toledo police gang task force, who regularly patrol known areas of Toledo where gang activity occurs. They conduct crime suppression and investigations with the purpose to get illegal drugs and firearms "off the street."

12.

**{¶ 25}** Appellant's vehicle, with its untinted windows down at least part way, stopped in the middle of Warren Street near Delaware Avenue, an area in Toledo patrolled by the gang task force. Appellant was talking through a window to some people outside. The unmarked police SUV was stopped directly behind appellant's car. The SUV also does not have tinted windows, and the windows are usually open a crack such that from a distance they may appear to be all the way up. The people left the area, and even when appellant turned onto Delaware, the strong marijuana odor followed appellant's car, which the police continued to follow. At that point detective Mugler became one-hundred-percent certain the marijuana odor came from the appellant's vehicle and not the people outside. He initiated a traffic stop by activating the SUV's overhead lights, but appellant continued traveling on Delaware and then turned down Putnam Avenue for a while before stopping. While turning down Putnam, detective Mugler observed appellant toss through the passenger window a plastic bag with a white substance. In detective Mugler's experience, when suspects discard items out of a window after police lights or sirens are activated, "it's because they're trying to get rid of drugs or guns or any type of contraband."

**{¶ 26}** Once stopped, detective Mugler approached the driver's side of the blue Pontiac G6 and "it was very clear that the marijuana was coming from that vehicle; it got stronger, I could smell it was burning." Detective Mugler then identified appellant as the driver. Detective Schotter retrieved the plastic bag from the grass near the intersection of

13.

Delaware and Putnam streets, which is where appellant tossed it from the blue Pontiac G6. The detectives transported the evidence to the police's central property room. Once there, detective Mugler secured the retrieved plastic bag with an evidence tag and completed the report to submit it for crime lab testing. The drug-analyst expert testified that the evidence tag was not broken until the contents were tested and determined to be 3.23 grams of crack cocaine.

{¶ 27} Based on the foregoing, we find that sufficient evidence was submitted to the jury such that, after viewing the evidence in a light most favorable to appellee, any rational trier of fact could have found the essential elements of the crimes of cocaine possession and tampering with evidence proven beyond a reasonable doubt: that on October 16, 2021, in Toledo, Lucas County, Ohio, appellant knowingly obtained, possessed, or used crack cocaine, a controlled substance, and that after knowing that an official proceeding or investigation was in progress or likely to be, appellant altered, destroyed, concealed, or removed the crack cocaine, with purpose to impair its value or availability as evidence in such proceeding or investigation.

{¶ 28} Appellant's second assignment of error is not well-taken.

## IV. Manifest Weight of the Evidence

{¶ 29} In support of his third assignment of error, appellant argues his convictions should be reversed because the evidence relied upon by the jury was not credible. Appellant argues the evidence was not credible because: the gang task force work is self-

14.

described as proactive; the crack cocaine found on the street is in a high-crime area such that "it is not inconceivable that the drugs may have been dropped or placed there before hand by some other individual"; detective Mugler's testimony of seeing appellant throw the plastic bag from the car was not corroborated by detective Schotter; and there is no forensic evidence from appellant or his vehicle to connect him with crack cocaine. Appellant concludes that "the jury's verdict was based on sympathy and respect for law enforcement and the danger they face by operating in high crime areas, and not on the evidence presented by the State of Ohio."

{¶ 30} In response, appellee argues the manifest weight of the evidence at trial supports appellant's convictions. Detective Mugler testified he witnessed appellant possess the crack cocaine when appellant threw the plastic bag containing crack cocaine from the car he drove as the only occupant. Detective Mugler also witnessed appellant tamper with that evidence when appellant threw the plastic bag containing crack cocaine from the car he drove as the only occupant. Appellant did so only after detective Mugler activated the lights on the unmarked police SUV, which appellant initially ignored to dispose of the illicit drug. Detective Schotter testified he retrieved the plastic bag from the location detective Mugler described. The expert drug analyst testified that the plastic bag's contents were 3.23 grams of crack cocaine, and the report of that drug analysis was admitted into evidence. Appellee argues that forensic evidence was presented at trial

15.

connecting appellant to the white substance in the plastic bag that was tested and confirmed to be 3.23 crack cocaine.

{¶ 31} "To evaluate a manifest-weight claim, we must review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of all the witnesses." *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 328. We must decide if the jury clearly lost its way in resolving conflicts in the evidence to create a manifest miscarriage of justice such that the conviction must be reversed and a new trial ordered. *Id.* A manifest-weight claim questions the effect of the evidence in inducing belief of appellant's guilt by questioning whether the jury could find the inclination of a greater amount of credible evidence was admitted at trial to sustain that decision than not. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). The discretionary power to grant a new trial is in the exceptional case in which the evidence weighs heavily against the conviction. *Id.* The unanimous concurrence of all three judges of a court of appeals panel is required to overturn, on the weight of evidence, a judgment that results from a jury. *Id.* at 389. Appellant does not meet his burden.

{¶ 32} In light of the testimony and evidence previously discussed, we find that any rational fact-finder could have found the inclination of a greater amount of credible evidence was admitted at trial than not to induce the jury's belief of appellant's guilt for cocaine possession and for tampering with evidence. The credible evidence admitted at trial includes direct testimonies from three witnesses who observed appellant with the

16.

plastic bag of cocaine when he tossed it from the blue Pontiac G6, who retrieved the plastic bag from the location where appellant tossed it after the police initiated the traffic stop, and who tested the plastic bag's contents and confirmed it was 3.23 grams of crack cocaine. In addition, the trial court admitted body-worm camera video evidence, physical evidence of the retrieved crack cocaine, and the crack cocaine lab analysis report. We find no exceptional instance from the record where the evidence admitted at trial weighs heavily against the convictions.

{¶ 33} Appellant's third assignment of error is not well-taken.

### V. Conclusion

{¶ 34} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

_____
JUDGE

Myron C. Duhart, P.J.

Charles E. Sulek, J.
CONCUR.

_____
JUDGE

_____
JUDGE

17.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.